## Case No. 15,696.

### UNITED STATES v. MACKOY et al.

[2 Dill. 299.] [2]

Circuit Court, D. Nebraska. 1872.

INTERNAL REVENUE—FORFEITURE OF DISTILLERY PROPERTY—RELEASE ON BOND—RIGHT TO RE-SEIZURE — SALE UNDER RE-SEIZURE — PURCHAS-ER'S TITLE—JURISDICTION OF DISTRICT AND CIR-CUIT COURTS.

1. Nature of the lien of the government, under the act of July 20, 1868 (15 Stat. 167), for taxes due it from distillers, and the remedy for enforcing such taxes considered.

2. Where property is seized, its subsequent release on bond does not divest the court of jurisdiction to go on with the condemnation proceedings.

3. The effect of such release is that the property may be sold by the owner bona fide, and give the purchaser a good title; but, except-ing where it will interfere with the rights of third persons, acquired after the release, and upon the faith of it, the court may re-seize the property, and order it to be sold.

[Distinguished in Alkan v. Bean, Case No. 202.]

4. A sale made to a purchaser under such a re-seizure sustained; and, under the circum-stances stated, the sale was held to pass to the purchaser all the interest of the United States, and the United States was held estopped to set up against him any lien thereon in ex-istence and known to it when the order of sale was made.

[Distinguished in Alkan v. Bean, Case No. 202.]

5. The jurisdiction of the district court, as a revenue court, of condemnation proceedings against a distillery, is not defeated by the sub-sequent bankruptcy of the owners of the dis-tillery.

6. Where the fund, arising from the sale of distillery property under condemnation proceed-ings, is in the district court, and the proceed-ings are there still pending, the circuit court, on an original bill in chancery, cannot with-draw that fund from the district court, or di-rect how it shall be distributed. Whether, under the internal revenue act of July 20, 1868 (15 Stat. 167), the lien of mechanics and of judgment creditors, which attached before the acts were done or suffered for which the property was forfeited, has priority over the claims of the government under the forfeiture, quære.

[Cited in Heidritter v. Elizabeth Oil-Cloth Co., 6 Fed. 142.]

This is a bill filed in this court under sec-tion 106 of "An act imposing taxes on dis-tilled spirits," etc., approved July 20, 1868 (15 Stat. 167). It is shown by the testimony that the property upon which the distillery of Mackoy & Co. was erected, was pur-chased by James C. Mackoy August 12, 1868; that he immediately commenced the erec-tion of the distillery thereon; that, on the 3d day of October, 1868, Mackoy & Co. gave the bond required by section 7 of the act cited, and on the 28th day of October, 1868, they commenced distilling; that they con-tinued distilling until the 22d day of Decem-ber, 1868, at which time their distillery was seized by the collector for violation of the revenue laws; that an information was filed in the district court December 28, 1868; and that, on the 14th day of January, 1869, the property was released to the claimants, Mackoy & Co., by order of the district judge, upon a satisfactory bond being given, as re-quired by law, in the sum of $15,410, the appraised value of the property seized. On the 1st of February, 1869, they resumed dis-tilling, but did not continue to exceed four weeks. Their operations in rectifying were of brief continuance, commencing about De-cember 10, 1868, and continuing only to the time of seizure (December 22, 1868), and nev-er resumed afterwards. The total amount of taxes assessed against the distillery was $7,980, and against the rectifier, $540, and of this the amount assessed subsequent to January 14, 1869 (when the property was released from seizure), was $4,888.50. On April 30, 1869, a petition in bankruptcy was filed against Mackoy & Co., and May 29, 1869, they were adjudged bankrupts. Pat-rick was elected assignee in bankruptcy, Ju-ly 6, 1869, and, on the 13th of July, a deed of assignment was made to him by the reg-ister in bankruptcy. On September 2, 1869,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

a trial was had in the district court, under the proceedings instituted for violation of the revenue laws, and a judgment of forfeiture and condemnation entered, and, on the 8th of February, 1870, a judgment was rendered against the sureties on the bond which had been given for the release of the property. A motion was then made on behalf of the sureties, that the property be ordered to be sold under the judgment of condemnation, and the proceeds applied to the satisfaction of the judgment rendered against the sureties. On the 15th of January, 1870, a petition was filed in the United States district court by Patrick, as assignee, for an injunction to restrain the sale of the property by the sheriff of Douglas county under certain executions which he held against Mackoy & Co., and in favor of certain judgment creditors, and praying for an order authorizing him to sell the property, under section 25 of the bankrupt act. Pending this petition, and the motion on behalf of the sureties above named, an order was made by the district court, on the 14th of February, 1870, overruling the motion of the sureties, but directing the marshal to sell the property, and return the proceeds into court for future order. The property was sold accordingly by the marshal to the defendant, Mageath, and an order confirming the sale entered May 21, 1870, and a deed executed to the purchaser, May 31, 1870. On December 16, 1870, an action was commenced by the district attorney on the distiller's bond, to recover the taxes assessed and unpaid, which is still pending in the district court. The present bill was filed in this court January 15, 1870, and recites the afore-mentioned proceedings in the district court, and makes defendants thereto the assignee in bankruptcy, various lien creditors of Mackoy & Co., the sureties on the bond given January 14, 1869, for the release of the distillery, the purchaser of said distillery property at the sale by the marshal, and also certain persons claiming to be entitled to the rights of informers. The bill sets forth that there is due the United States from Mackoy & Co, as taxes due from October, 1868, to March, 1869, inclusive (which covers the whole period during which the distillery was operated by them), the sum of $11,264.85, and it asks to have the property subjected to the payment thereof, or if this be not done, that the proceeds of the sale of the property by the marshal be appropriated to the payment of such taxes, and to have the rights and equities of the various defendants settled. Answers have been filed by the several defendants, and the cause has been submitted upon the pleadings and proofs.

Jas. Neville, U. S. Dist. Atty.

John I. Redick, J. M. Woolworth, Geo. W. Doane, G. W. Ambrose, B. E. B. Kennedy, and E. Wakeley, for defendants.

Before DILLON, Circuit Judge, and DUNDY, District Judge.

DILLON, Circuit Judge. This bill is brought in this court under section 106 of the act of July 20, 1868 (15 Stat. 167), to enforce the lien of the United States upon the distillery property which belonged to Mackoy & Co., for taxes which were assessed against them from October, 1868. to March, 1869, inclusive, covering the whole period during which the firm operated the distillery. A portion of these taxes accrued prior to the seizure of the property, on the 22d day of December, 1868, and a portion after the property was released on bond (which was on the 14th day of January, 1869), and placed again in the hands of Mackoy & Co. Pending the proceedings in the district court to have the property declared forfeited, Mackoy & Co. were adjudicated bankrupts. Afterwards, viz. September 2, 1869, judgment of forfeiture was entered against the distillery property. The bond which had been given for the release of the property (January 14, 1869), was conditioned to the effect that if the property shall be condemned as forfeited, the obligors will thereupon pay into court the appraised value thereof, viz: $15,410.06. On the 8th day of February, 1870. judgment was rendered against the sureties on this bond for the amount of the appraised value of the property. On the 14th day of February, 1870, the court overruled the motion of the sureties to have the property sold and the proceeds applied towards the satisfaction of the judgment against them, but at the same time caused to be entered of record an order "that the marshal do proceed to sell, after giving thirty days notice, the property heretofore seized in this proceeding, and return the proceeds arising therefrom into the registry of this court, to abide the further order of the court."

Pursuant to this order, the marshal sold the distillery property May 3, 1870, to S. D. Mageath, for $12,100. and the rectifying establishment to the same person for $2,800, and the proceeds of such sales are still in the registry of the district court. This sale was confirmed by the district court, and the purchaser, after the confirmation, and before this bill was filed, had made improvements upon the property to the amount of $24,000. Respecting this sale, the present bill contains the following averment: "That the order for said sale was made by the district court, at the request, and by the consent of all parties interested in the said property." When the United States asked for or consented to the sale of the property, the present bill subsequently amended, had been filed in this court, asking to have the taxes declared to be a lien upon the distillery property. When the sale was ordered the property was lying idle, and becoming dilapidated. After the sale was made it was

repaired and improved, and has since paid revenues to the government to an amount stated to exceed $200,000. These circumstances vindicate the propriety of ordering the sale, but the question is now made that the sale is void on the ground that the district court had no jurisdiction to order it, because the property had been released upon bond, and was not then in its custody.

It ought to be mentioned that, subsequent to its release on bond, it had again, May 11, 1869, been seized by the collector for nonpayment of taxes, and advertised for sale, July 2, 1869, but that, before that date, to-wit: June 30, 1869, the proceedings under this seizure were abandoned, and the district attorney instructed to commence proceedings upon the bond, given under section 7 of the act of July 20, 1868.

I am of the opinion that the district court had jurisdiction to order the sale of property, and that the sale which was made to the purchaser, who has acted in good faith upon it, must be upheld. By the act of July 20, 1868, the government has a bond for the security of taxes which may accrue to it (section 7), and taxes due it are made a lien upon the property from the "time the spirits are distilled until the said tax shall be paid" (section 1), and the lien for taxes may be enforced by a bill in chancery, filed in a district or circuit court of the United States (section 106). Such taxes are made a lien or incumbrance on the property. Other provisions of the statute, however, denounce an absolute forfeiture, by the owner, of all his interest in the property, to the United States for certain acts and omissions of the distiller, and it was for such acts and omissions that it was seized, on the 22d day of December, 1868, and subsequently judicially declared to be forfeited by the government. The release of the property on bond does not divest the court of its jurisdiction to go on with the condemnation proceedings. The Little Charles [Case No. 15,612]. The effect of a release of the property on bond is, that it may be sold bona fide, and give the purchaser a good title, or liens or rights may be acquired after such release, which will be protected; but, saving the rights of purchasers and third persons, lawfully acquired after the release, I think the court may, if it sees proper, as where the bond is worthless and the property is accessible, or where it has been deceived into taking inadequate security, or where justice will be promoted by such a course, re-seize the property, and order the same to be sold. See The Gran Para, 10 Wheat. [23 U. S.] 497; The Little Charles [supra]; The Empire [Case No. 4,472]; Livingston v. The Jewess [Id. 8,412], per Betts, J. Compare The Union [Id. 14,346], and The Hero, Brown & L. 447. And this was, in substance, the nature of the order upon which the property was sold. As that proceeding was pending when the bankruptcy of Mackoy & Co. (the claimants) occurred, it is evident that the jurisdiction of the district court, as a revenue court, was not divested by that event. The title to the property passed, therefore, to Mageath, under the sale and deed to him by the marshal, and this sale was one made for the benefit of the United States, as the owner of the property, by reason of the forfeiture of the same to it. At the time of the sale the United States was the owner of the property, under a forfeiture judicially ascertained, and had been such owner from the time of the violation of the law, for which it was seized. Gilson v. Hoyt, 3 Wheat. [16 U. S.] 246, 311; U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 398. Perhaps an order might have been made to sell the property subject to the lien of the United States for taxes, but no such reservation was made. There is no evidence to show that the United States intended to keep alive a tax lien upon the property. On the contrary, there is evidence that it abandoned the proceedings by which the property had been seized to secure the taxes now sought to be enforced, and the district attorney was instructed to commence suit on the bond.

Under the circumstances my judgment is, that the marshal's sale and deed passed and conveyed to the purchaser all of the interest of the United States in the property sold, and that the United States is estopped to set up as against the purchaser any lien thereon for taxes in existence, and known to it at the time the order for the sale was made. Mills v. Comstock, 5 Johns. Ch. 214; Star v. Ellis, 6 Johns. Ch. 393.

It is distinctly admitted on the face of the present bill that the government consented to the order of sale, and it is quite plain upon the evidence that it was the intention to sell, to whomsoever should purchase, a clear and perfect title, and that the parties interested should litigate thereafter over the proceeds of such sale. As against the government, which, if it did not procure the order of sale, consented to it, the purchaser takes all its interest. Frische v. Kramer's Lessee, 16 Ohio, 125; Jackson v. Bowen, 7 Cow. 13.

If the foregoing views are correct, the bill, so far as it seeks to enforce a lien upon the property purchased by Mageath, must fail. Can it be retained for the purpose of settling the rights and equities of the different parties with respect to the fund produced by the sale? That fund is in the district court, and not in this court. It was returned there to abide its further order. That court is entitled to retain the fund, and itself to make orders disposing of it, and its action in this respect is subject to revision here in the usual mode. But this court cannot lay its hands upon that fund, and withdraw it from the district court, nor can it enter a decree directing how that fund shall be disposed of. The jurisdiction of that court continues until the proceedings out of which the fund arose are ended, and the final order for distribution made. Among those asserting an interest in the fund are two persons who claim as in-

formers. and whose rights have never been determined. The express provision of the law is that those rights shall "be ascertained by the court which decrees the forfeiture" (Act June 30, 1864, § 179), which is the district court, and not this court. Among those, also, who make a claim upon the fund, are certain mechanics, who furnished the material for, and did work upon the distillery prior to its seizure, and certain judgment creditors of Mackoy & Co. and also the assignee in bankruptcy. These lienors did not intervene in the condemnation proceedings, and hence are bound by the decree therein, and cut off thereby from all resort to the property sold. The Mary, 9 Cranch [13 U. S.] 126. But they may, notwithstanding the decree of condemnation, and while the fund is still in court, apply in proper manner to establish their alleged rights and equities in respect to it. The Siren, 7 Wall. [74 U. S.] 152, 159; Mutual Safety Ins. Co. v. Cargo of The George [Case No. 9,981]; Andrews v. Wall, 3 How. [44 U. S.] 568; The Sibyl, 4 Wheat. [17 U. S.] 98; Keen v. Gloucester, 2 Dall. [2 U. S.] 36. But this application must be made to, and in the first instance decided by, the court in which the fund remains.

Whether, under the peculiar provisions of the act of July 20, 1868 (see sections 1, 7, 8, 44, 106), the liens of mechanics and judgment creditors, which, under the laws of the state, fully attached before the acts were done or suffered for which the property was forfeited to the United States, have priority over claims of the government under the forfeiture, is a question upon which I do not find it necessary or deem it proper to give any opinion at this time. In any event, all interest of Mackoy & Co. in the property was forfeited to the government, and this forfeiture has been judicially ascertained and decided, and, therefore, it is not perceived what interest the bankrupt's estate has in the fund. The argument that the sale was void because not made by the order of the bankruptcy court, and that the bankruptcy court alone has jurisdiction to settle the equities of all parties to the fund, and to distribute it, has no foundation upon which to rest, for the reason that the decree of condemnation conclusively settles that the bankrupts had forfeited all their rights in the property before the petition in bankruptcy was filed, and it is certain that such forfeiture is not subject to the rights of general creditors.

The bill filed in this court must, therefore, be dismissed; but since all parties have taken proofs to sustain their respective claims, I recommend that by agreement all the pleadings and proofs be filed in the district court, and the cause submitted thereon to it, reserving, if desired, the right of all parties to appeal. This will save time and expense, and facilitate the closing of this complicated and already long protracted litigation. No costs will be allowed to any of the parties. Bill dismissed.

NOTE. Lien for tax as against innocent purchaser. Section 32 of the act of July 13, 1866 (14 Stat. 157), was construed by Mr. Justice Swayne in the United States circuit court for the Southern district of Ohio, in the case of U. S. v. Turner [Case No. 16,548]. The case was heard upon bill brought to subject a distillery to payment of tax upon whiskey, claimed to be a lien thereon. The tax accrued in February, 1867, while the Turners were owning and operating the distillery. It was, in the same month, removed upon transportation bonds, but was, without the payment of tax, sold in the markets. Suits were begun in September, 1867, upon the bonds, and judgment recovered thereon in March and April, 1871, for the aggregate sum of $31,533.26. In June, 1867, the Turners sold their distillery, and in April, 1868, Stoltz became the innocent owner for value. In his answer Stoltz claimed: First, that being an innocent purchaser, without notice of the alleged lien of the government, he took the premises discharged therefrom. Second, that the lien of the United States upon the distillery for tax is upon the whiskey, and was discharged by the taking of the transportation bond. Justice Swayne held that the provisions of section 32 of the act of July 13, 1866, upon which the claim of the plaintiff is founded, providing that the tax in question should be a lien on the interest of said distiller in the tract of land whereon the said distillery is situated from the time said spirits are distilled until said tax should be paid, is absolute and unconditional, and secures to the government a lien upon the distillery premises as against innocent purchasers without notice. The learned justice alluded to a case he had decided some years previously, in which he had held, after consideration, that the lien of the government for unpaid taxes, under the same section, upon spirits fraudulently recovered from the distillery, was good as against innocent purchasers. Decree was passed in favor of the government for sale of the property.