EXCHANGE TRUST COMPANY *v.* DRAINAGE DISTRICT NO. 7, POINSETT COUNTY, ARKANSAS, ET AL.

No. 114. Argued January 9, 1929.—Decided January 21, 1929.

422

*Messrs. Arthur L. Adams* and *J. A. Tellier,* with whom *Messrs. D. F. Taylor, John S. Mosby,* and *H. M. Cooley* were on the brief, for plaintiff in error.

*Mr. R. B. McCulloch* with whom *Mr. Burk Mann* was on the brief, for St. Francis Levee District.

*Mr. Charles D. Frierson* appeared and was on the brief for Drainage District No. 7.

Mr. CHIEF JUSTICE TAFT delivered the opinion of the Court.

Roy Rice and others were homesteaders under the United States statutes upon lands of the Government situate in Poinsett County, Arkansas. The lands were in Drainage District No. 7 of Poinsett County. Drainage

District No. 7 had been organized under a special act of the Legislature of Arkansas. Arkansas Acts of 1917, p. 1053. As originally formed, the district consisted of lands west of the St. Francis River in Poinsett County. Rice and others had their homestead locations in that county east of the St. Francis River. Their lands were flooded by the waters of a drainage district organized in Mississippi County. In order to secure protection against such flood waters, and to secure better drainage to their own lands, they petitioned the county court to allow their lands to be added to Drainage District No. 7 of Poinsett County. On March 15, 1918, the petition for annexation of the homestead lands of Rice and others east of the river was acted upon by the county court, and the order of annexation was made. It provided that there should be levied against the lands annexed assessments in accordance with the benefits which the lands should receive from the cost of the drainage. The board of directors of the original drainage district consented to this in open court. On May 24, 1919, the drainage district altered its plans so as to provide for and include in the new assessments the drainage of the territory of the original district on the west side of the river. A judgment was entered reciting the annexation of the lands and the confirmation of it by the General Assembly of Arkansas. Arkansas Special Acts, 1919, p. 52.

On June 28, 1919, the county court entered a judgment making a modification of the drainage assessments because of the change of plans. It recited that the estimated cost of the entire improvement had been increased to $3,392,000. On June 23, 1919, the county court confirmed the assessments made upon the lands annexed as well as the assessments upon the other lands in the district. Nearly all lands embraced in the annexation to the district, including the land of plaintiff, belonged to the United States at the time the original district was

organized in 1917, but prior to June 23, 1919, Rice and practically all the other homesteaders of the United States in this district received their final certificates of entry or their patents on the land herein involved. After that date, on April 5, 1922, the board of directors of the district filed a report in the county court stating that the assessment of benefits had become unequal and offered a complete re-assessment of benefits upon all the lands in the district, including the annexed lands. And on May 31, 1922, the county court made an order establishing a readjustment of the assessment of benefits. Rice died, and the Exchange Trust Company succeeded him as his executor. This suit was brought to enjoin the enforcement of the assessments on his property in the drainage district, on the ground that the assessments were made while the land in question was the property of the United States, and before Rice's title had ripened into ownership.

The plaintiff's contention was that the drainage assessments were void on the authority of *Lee* v. *Osceola & Little River Road Improvement District No. 1 of Mississippi County, Arkansas,* 268 U. S. 643. In that case it was held that a State could not impose special taxes on lands acquired by private owners from the United States on account of benefits resulting from a road improvement made before the United States parted with its title. In this case the Chancellor of the state court held that the *Lee* case applied, and enjoined the enforcement of the assessments. The Supreme Court of Arkansas held that Rice and his executor were estopped to object to the collection of the assessments. 175 Ark. 934.

Objection was made to the defects in the proceedings of annexation, but they were cured by an act of the Legislature covering the re-assessment, which was approved and confirmed March 23, 1923. It is quite clear that this

curative act was completely effective. *Read* v. *City of Plattsmouth,* 107 U. S. 568; *National Bank* v. *County of Yankton,* 101 U. S. 129; *Utter* v. *Franklin,* 172 U. S. 416; *Town of Thompson* v. *Perrine,* 103 U. S. 806.

But however this may be, it is clear that Rice and his associates deliberately sought the benefit of the annexation of the lands to the east of the river, acquired it and are now enjoying it, and that they can not now be heard to question the validity of the assessments invited by them for the very purpose of securing the benefits conferred. This fully distinguishes the *Lee* case.

Nor is it even necessary to resort to the principles of estoppel *in pais* in this case. The record shows that the lands were annexed by the county court order of March 15, 1918; that the plans for improvement east of the St. Francis River were not filed until May 24, 1919; and that the first assessment filed affecting the lands in controversy was on May 24, 1919. Neither the plans nor the assessments were approved until June 23, 1919. The first bonds issued affecting the lands here involved were issued August 1, 1919. By June, 1919, Rice and practically all the other land owners who petitioned for the annexation had received final certificates of entry from the United States. By those certificates they acquired the equitable title to the land, and that became subject to taxation and assessment, even though the legal title remained in the United States. *Irwin* v. *Wright,* 258 U. S. 219, 229; *Bothwell* v. *Bingham County,* 237 U. S. 642, 647; *Witherspoon* v. *Duncan,* 21 Ark. 240; s. c. 4 Wall. 210. Moreover, the record shows that the final certificate was issued to Rice February 14, 1919, and that a patent was issued to him June 3, 1919. It follows that the work to be done for the benefit of these lands was not done until after the full legal title had passed to Rice.

*Decree affirmed.*

There was another issue in this case when it first came here. This concerned assessments upon the St. Francis Levee District which Rice and his associates also sought to enjoin. At the argument, the parties agreed upon a consent order in respect to the Levee District as follows:

"This cause came on to be heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, counsel for defendant in error, St. Francis Levee District, consenting, it was ordered, adjudged and decreed as follows, viz:

"That the prayer of the complaint for cancellation of decrees of foreclosure in favor of defendant in error, St. Francis Levee District, is granted and said decrees are cancelled and held for naught as clouds upon the title to said lands; and said St. Francis Levee District is forever enjoined from taxing or attempting to tax said lands to pay for improvements made or administrative or other expenses incurred prior to issuing of final certificate by the United States; that said lands are subject to tax for the cost of improvements, administrative, or other expenses of said St. Francis Levee District contracted for subsequent to the issuing of final certificate from the United States and the Supreme Court of Arkansas is reversed in so far as the judgment is inconsistent herewith, and the cause is remanded to the Supreme Court of Arkansas for further proceedings not inconsistent with this conclusion.

"Mandate will issue accordingly."

The above opinion and the agreed order dispose of the whole case so far as this Court is concerned. The Supreme Court of Arkansas will be at liberty to take such further action in the case as may be in keeping with the local law and not inconsistent with our opinion and agreed order.