STATE OF MISSOURI at the Relation of EDMOND KOELN v. LEM MOTLOW, Appellant.—76 S. W. (2d) 417.

Court en Banc, November 20, 1934.

*Cullen, Fauntleroy & Edwards* for appellant.

*Edward W. Foristel* and *Frank H. Haskins* for respondent.

HYDE, C.—This case, coming to the writer by reassignment, is a suit for back taxes on real estate for the years 1924, 1925 and 1926 for State purposes, school purposes and municipal purposes of the city of St. Louis. Defendant sought to defeat the collection of these taxes under the following provision of Section 1, Article 14, of the Constitution of this State, to-wit: "No tax shall be imposed on lands the property of the United States;" under Section 9743, Revised Statutes 1929, of the revenue laws of this State, exempting from taxation pursuant thereto, as follows: "Lands and lots, public buildings and structures with their furniture and equipments, belonging to the United States;" and under the Federal decisions holding that a state cannot tax property of the Federal Government. [McCulloch v. Maryland, 4 Wheat. 316; Van Brocklin v. Tennessee, 117 U. S. 151, 6 Sup. Ct. 670, 29 L. Ed. 845; Wisconsin Central Railroad Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; Irwin v. Wright, 258 U. S. 219, 42 Sup. Ct. 293, 66 L. Ed. 573.] Judgment was rendered against defendant in the circuit court for $3,882.76 for the amount of the taxes and penalties. This amount was adjudged to be a special and first lien to be levied out of the above real property, which the sheriff was directed to sell according to law for that purpose. Defendant has appealed from this judgment.

Prior to the effective date of wartime prohibition in 1917, the real estate in question was leased by defendant to the Jack Daniel Distilling Company, a corporation of which defendant was the principal stockholder. Thereafter, the distilling company suspended operations but continued to store whiskey on the premises. After national prohibition went into effect defendant, on January 1, 1921, made a new lease to the distilling company to continue until December 31, 1925. The distilling company filed notice of intention to continue in business in accordance with Section 3259, Revised Statutes (26 U. S. C. A., sec. 282). The company also gave the bond required by Section 3260, Revised Statutes (26 U. S. C. A., sec. 284). Defendant in accordance with Section 3262, Revised Statutes (26 U. S. C. A., sec. 286), filed an owner's consent for the period of the lease which provided that ''the undersigned further expressly agree and consent that the lien of the United States for taxes and penalties shall have priority of any mortgage, judgment or other encumbrances upon said property, and that in case of the forfeiture of the distillery premises or any part thereof, the title to the same shall vest in the United States discharged of any claim of title by the undersigned or any such mortgage, judgment or other encumbrance.'' Thereafter, in June, 1923, defendant and his associates sold all of their stock in the distilling company to other persons and the lease previously made was terminated. A new lease was then made to the distilling company, under its new ownership, for one year with provisions for annual renewals. In September, 1923, it was discovered that the whiskey of the distilling company had been wrongfully removed without payment of the tax imposed thereon by the United States. The property was immediately seized by the Collector of Internal Revenue and on January 16, 1924, a proceeding in libel was commenced to condemn the real estate as forfeited to the United States and ''that the title thereto be vested in the United States for the purpose of disposal thereof and that the United States Marshal may be ordered to sell and dispose of the same.'' Under this proceeding the United States Marshal took the property into custody and continued to hold the same until it was released by order of the United States District Court, September 25, 1928. Thereafter, on December 13, 1928, this suit was commenced. An account of defendant's troubles with the Federal Government and other litigation growing out of the seizure can be found, by those interested, in United States v. Motlow, 13 Fed. (2d) 645; Motlow v. United States, 35 Fed. (2d) 90, and Southern Surety Co. v. Motlow, 61 Fed. (2d) 464.

For the decision of the question presented in this case it is only necessary to consider the proceedings in the libel suit for the con-

demnation of the real estate here involved, including the release order made by the United States District Court, September 25, 1928, as shown by the record. That proceeding was heard in the United States District Court in St. Louis on July 2, 1928, at which time the following stipulation was filed:

"It is agreed between counsel for plaintiff and counsel for the defendant that should the Court render judgment for the plaintiff on the evidence and the pleadings condemning the real estate or so much thereof as the Court may find subject to condemnation a decree may be entered containing an alternative (provisions) that said *judgment of condemnation may be* fully satisfied and *set aside* on payment, within thirty days after its rendition, of a sum of money not less than $20,000, should the judgment be against the defendants and in favor of plaintiff and if the said defendants should desire to appeal, it is further understood and agreed that a good and solvent bond in amount sufficient to secure the payment of the judgment should it be affirmed may be given by the defendants and the *property immediately released* from all claim in favor of the Government of the United States, *and said bond* so given *shall stand in lieu of and in place of said property."* (There were also provisions in the stipulation covering the event of a decision in favor of defendants and an appeal by the United States.) (Our italics.)

The United States District Court found against defendant and on September 19, 1928, entered a judgment, the material part of which is, as follows:

"The Court, on the evidence adduced, doth find that plaintiff is entitled to recover and the property described in said libel heretofore set forth in this decree, is subject to seizure by and forfeiture to the Government of the United States.

"Wherefore, it is decreed, ordered and adjudged that the property hereinabove described, both real and personal, be forfeited to the Government and sold to satisfy the claim of the Government.

"By the stipulation aforesaid, the parties have entered into an agreement that a judgment may be entered in the alternative and pursuant to said stipulation, it is adjudged and decreed that if the claimants or owners of the property may, at their option, pay to the United States Government within thirty days from this date, the sum of Twenty Thousand ($20,000) Dollars, then and in that event the property, both real and personal, shall be immediately delivered to claimants, Lem and Ophelia Motlow, and also released from all claims of every kind and character whatsoever, and that the judgment of forfeiture above entered shall not be enforcible nor shall it be enforced, but the payment of Twenty Thousand ($20,000) Dollars shall be in full satisfaction of the aforesaid judgment and shall

operate as a release of the lien of said judgment and any cause of action in favor of the Government as to said property described in said libel, or

"Should the claimants or the owners of the property desire to perfect an appeal from this judgment, then in accordance with the stipulation aforesaid, it is ordered, adjudged and decreed that the said parties may give or cause to be given a bond to the United States Government in the sum of Twenty Thousand ($20,000) Dollars conditioned as in said stipulation specified, said bond to be presented to the Clerk of this Court and approved by him and by the Judge of said Court. It is further adjudged and decreed that *on approval of said bond, that possession of the real and personal property described* in the libel and in this decree *shall be immediately delivered to Lem and Ophelia Motlow*, and, upon the giving of said bond, all of said property, real and personal, *shall be forever released of any lien or claim of any kind whatsoever in favor of the United States Government and the aforesaid bond shall stand in lieu of and in place of said property* described in the libel and in this judgment and upon the giving of said bond *the judgment of forfeiture above entered shall not be enforcible nor shall it be enforced nor shall it be a lien upon the property* therein described and the giving of said bond shall operate as a release by the United States Government of the lien of said judgment and of all claims of every kind and character whatsoever against the property herein described." (Our italics.)

Defendant did appeal and gave the bond provided for in the judgment whereupon the court, on September 25, 1928, entered an order, releasing the property, which described the land and stated that the same, "together with all buildings, houses, sheds and all personal property therein contained of every kind and nature and description; is hereby, in accordance with the terms of said judgment, forever released from all claims of every kind and character whatsoever in favor of the United States Government and the bond aforesaid is to stand in lieu of and in place of said property, and it is further ordered, adjudged and decreed that all of said property, real, personal and mixed, be immediately turned over to Lem Motlow, and the officers of the United States Government now in charge of said property are hereby ordered and directed to turn all of said property over to said Lem Motlow or his representatives, and henceforth the United States Government shall be deemed to have no lien claim or interest in said property of any kind or character whatsoever but the title and possession of same shall be vested in him to the exclusion of the United States Government or any of its officers, agents or representatives." The defendant pursuant to said order took possession of the property and continued thereafter in possession of it.

His appeal was decided against him, 35 Fed. (2d) 90, in October, 1929, and he paid the amount of the bond prior to the trial in this case.

Defendant's contention here is that "at the time the taxes sued for were assessed the real estate was the property of the United States of America and not subject to taxes by the State." We think that defendant is wrong and we hold that the proceedings did not have the effect of vesting actual ownership of the property in the United States to the extent that taxes assessed against it due and payable during the years 1924, 1925 and 1926 are invalid and uncollectible, for the reasons hereinafter stated.

Section 3251, Revised Statutes (26 U. S. C. A., sec. 249), provides that United States revenue taxes *shall be a first lien* upon "the lot or tract of land whereon the said distillery is situated."

Section 3262, Revised Statutes (26 U. S. C. A., sec. 286), provides: "No bond of a distiller shall be approved, unless he is the owner in fee, unincumbered by any mortgage, judgment, or other lien, of the lot or tract of land on which the distillery is situated, or unless he files with the collector, in connection with his notice, the written consent of the owner of the fee, and of any mortgagee, judgment creditor, or other person having a lien thereon, duly acknowledged, that the premises may be used for the purpose of distilling spirits, subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes and penalties shall have priority of such mortgage, judgment, or other incumbrance, and that in case of the forfeiture of the distillery premises, or of any part thereof, the title of the same shall vest in the United States, discharged from such mortgage, judgment, or other incumbrance."

Section 3281, Revised Statutes (26 U. S. C. A., sec. 306), provides: "Any person who shall . . . carry on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or of any part thereof, shall, for every such offense, be fined . . . and imprisoned. . . . And . . . all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same, . . . shall be forfeited to the United States."

The Supreme Court of the United States in construing these sections has held:

"If the person executing the waiver owns the fee, the government, with his consent, is to have a first lien on the distillery premises. If he holds an incumbrance, simply, then the lien of the United States is to have priority over that incumbrance. But in neither case does

the distiller acquire an interest in the premises. *In neither does the government acquire anything more than a first or prior lien. . . .* The only mode by which the fee could be sold, namely, a suit in equity, in which all persons interested in the property could have been made parties.'' [Mansfield v. Excelsior Refinery Co., 135 U. S. 326, 10 Sup. Ct. 825, 34 L. Ed. 162.]

As to the effect of forfeiture proceedings the United States Supreme Court, in a case where the question for decision was the validity and priority of a mortgage given before the premises were used for a distillery, has also held:

''Congress has thus clearly manifested its intention that the forfeiture of land and buildings shall not reach beyond the right, title, and interest of the distiller, or of such other persons as have consented to the carrying on of the business of a distillery upon the premises. . . . That the interest of an innocent mortgagee or other person having a lien on the lot or, tract of land on which the distillery is situated would not otherwise be included in a forfeiture for acts of the owner only. . . . As to the real estate, to forfeit only the right, title, and interest of the distiller, and of any persons who participate in or consent to the carrying on of the distillery.'' [United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555; for recent cases, see notes 47 A. L. R. 1055, 61 A. L. R. 551, 73 A. L. R. 1037.]

In the same case the Supreme Court also considered the question of the date when forfeiture is effective against subsequent transactions, saying: ''The forfeiture takes effect immediately upon the commission of the act; *the right to the property then vests in the United States, although their title is not perfected until judicial condemnation;* the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and *the condemnation,* when obtained, *relates back to that time,* and avoids all intermediate sales and alienations, even to purchasers in good faith. . . . As soon as a still was set up on the land, with the mortgagor's knowledge and consent, in violation of the internal revenue laws, the forfeiture under those laws took effect, and (though needing judicial condemnation to perfect it) operated from that time as a statutory conveyance to the United States of all the right, title, and interest then remaining in the mortgagor, and was as valid and effectual, against all the world, as a recorded deed. The right so vested in the United States could not be defeated or impaired by any subsequent dealings of the mortgagee with the mortgagor.''

It is true that under every kind of forfeiture to the State the title, which is acquired through proceedings to enforce the forfeiture,

relates back to the time of the commission of the act for which the property is forfeited. [See authorities in note 7 Ann. Cas. 899.] If that were not true and the right to forfeit property could be defeated by subsequent transactions, forfeiture would be a worthless remedy. It is, however, stated:

"The title of the owner of property as to which an act of forfeiture has been committed is not divested *eo instante* upon the commission of the offense, or by its seizure, but by the judgment or decree of a court having jurisdiction in the premises, ascertaining and declaring the forfeiture. Whatever may be the view as to the time when the forfeiture takes place, it is by the judgment alone that it can be ascertained and determined. If the government may be deemed to have an inchoate title from the time the offense is committed, it is not consummated until after a judicial condemnation. And if after a seizure the possession is abandoned by the government, and a decree of forfeiture is not obtained, the title and the right of possession is in the original owner. [Tracey v. Corse, 58 N. Y. 143, citing Slocum v. Mayberry, 2 Wheat. (U. S.) 1; Gelston v. Hoyt, 3 Wheat. (U. S.) 246; United States v. Grundy, 3 Cranch (U. S.) 350; United States v. 1960 Bags Coffee, 8 Cranch (U. S.) 398; Caldwell v. United States, 8 How. (U. S.) 381.]" [7 Am. & Eng. Ann. Cas. 1. c. 900.]

It is clear that the government has the right to proceed either by foreclosure of its lien on the property for the taxes or by a complete forfeiture of the entire title. Here, it commenced by forfeiture but the property in this case was released and abandoned before any judgment of condemnation became final. A condition, making condemnation of the land not enforceable, was made a part of the judgment which was rendered. The very purpose of the stipulation, set out above, was to prevent the final judgment, in the condemnation suit of the government, from affecting in any way the title of defendant to the real estate involved. The judgment, above set out, specifically provided for the giving of a bond which should stand in lieu of and in place of the land so that the final judgment would operate upon it instead of upon the title to the land. When the bond was given both the claim and lien of the United States on the land was by order of the court released, although the case was not ended and the right of the government to forfeit the land had not been finally determined, but remained to be tested on appeal. Therefore, defendant never brought the land from the government; what he did in effect, was merely to pay off its lien, since it was then willing to accept a cash settlement and not complete the forfeiture. It was no more a purchase from the government than if he had paid the taxes due by consent of the government before it brought any suit

and thereby prevented the commencement of forfeiture proceedings. Certainly, after the government took other security for its money and released the land, it had no interest in defeating the lien of the State of Missouri, for taxes due on the land and, thereafter, it did not attempt to acquire title to the land either by condemnation or by foreclosure of its lien. Therefore, the case never reached the stage where there could be any conflict between the liens of this State, and the lien or title of the United States.

The procedure for forfeiting land is to obtain a condemnation judgment, under the forfeiture section of the internal revenue law, and then issue execution thereunder to the United States marshal to sell it. [Norbriga v. United States, 55 Fed. (2d) 146, and cases cited; Heidritter v. Elizabeth Oil-Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; United States v. Mackoy, 26 Fed. Cas. 1123, case No. 15696.] In the latter case, as here, after forfeiture proceedings had been commenced the property was released on bond. The court said:

"The effect of a release of the property on bond is, that *it may be sold bona fide, and give the purchaser a good title,* or liens or rights may be acquired after such release, which will be protected; but, saving the rights of purchasers and third persons, lawfully acquired after the release, I think the court may, if it sees proper, as where the bond is worthless and the property is accessible, or where it has been deceived into taking inadequate security, or where justice will be promoted by such a course, re-seize the property, and order the same to be sold."

If a release on bond before judgment has the effect of allowing the owner to pass a good title to anyone before the case is finally determined, *surely the land is not owned by the United States until after a final judgment condemning it.* We recognize that had the property in controversy here been, under judgment of condemnation, "sold, struck off, and purchased by the United States for the amount of tax thereon, and afterwards sold by the United States" as in the Van Brocklin case, supra, that all assessments of taxes by this State "made while the land was owned by the United States" would have been unlawful and would have "created no lien upon the land." However, even where the United States holds the legal title "an exception to this principle, or rather its nonapplication, is recognized where the government has by final certificate parted with the equitable title to a person subject to state taxation and retains only the legal title by its delay in issuing a patent." [Irwin v. Wright, 258 U. S. 1. c. 219, and cases cited; Exchange Trust Co. v. Drainage District No. 7, 278 U. S. 421, 49 Sup. Ct. 181, 73 L. Ed. 436.] Surely nonapplication of the principle would likewise be

recognized where, as here, legal title never vested in the government, because, although it could have, it never did obtain even a final judgment of condemnation, before releasing the land, through which it was possible to acquire the legal title to property seized. We hold that the United States never became the actual owner of the land within the meaning of Section 1, Article 14, of our Constitution or of the Federal cases holding that land owned by the United States cannot be taxed by a state.

Defendant says that had it not been for the fact that the government had title by the forfeiture proceedings so as to wipe out the right of the state to levy against it, the government would not have been able to get the $20,000 due it. We hold that the government did get its money without ever becoming the owner of the land, so that matter is now immaterial, but we also note that there was insurance for $97,900, and that defendant testified that the machinery alone was worth $75,000.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by HYDE, C., in Division One is adopted as the opinion of the Court en Banc. All concur.