650 F.2d 78
 KANEB SERVICES, INC., Southwestern Group Financial, Inc. and
United Savings Association of Texas, Petitioners,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Respondent.
KANEB SERVICES, INC., et al., Petitioners,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Respondent.
 Nos. 80-1136, 80-1559.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 July 7, 1981.
 Baker, Brown, Sharman, Wise & Stephens, J. Michael Bell, Houston, Tex., Dechert, Price & Rhoads, Arthur W. Leibold, Jr., Washington, D. C., for petitioners.
 Harvey Simon, Atty., Michael L. Seabolt, Federal Home Loan Bank Board, Washington, D. C., for respondent.
 Petitions for Review of Orders of the Federal Savings and Loan Insurance Corporation.
 Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Petitioners Kaneb Services, Inc. (Kaneb), Southwestern Group Financial, Inc. (SGF) and United Savings Association of Texas (United Savings) filed petitions for review in this court pursuant to section 408(k) of the National Housing Act, 12 U.S.C. § 1730a(k),[1] seeking to obtain modification of orders issued by respondent, the Federal Savings and Loan Insurance Corporation (FSLIC). Specifically, petitioners challenge the legality of a provision in the orders issued by the FSLIC which restricts the amount of dividends United Savings can pay in any fiscal year. We hold that petitioners are estopped from challenging the FSLIC's orders; likewise that respondent properly exercised authority to impose the dividend restrictions in question. The requests of petitioners for review and modification are therefore denied.
 
 I. Facts
 
 2
 This case concerns acquisition of two smaller corporations by Kaneb, a diversified company specializing in financial services and energy-related enterprises. The two corporations, SGF and World Savings Association (World), were involved exclusively in the savings and loan business. The SGF acquisition occurred first, the transaction being initiated through a proposal by Kaneb for a stock-for-stock merger. SGF, a savings and loan holding company, owned the stock of United Savings, an FSLIC-insured institution. Thus, before Kaneb could acquire control of SGF, it was required pursuant to 12 U.S.C. § 1730a(e)(1)(B) to obtain written approval from the FSLIC.[2] Accordingly, Kaneb filed an application for FSLIC approval in September 1978.
 
 
 3
 In February 1979, the FSLIC issued a resolution approving the SGF transaction subject to several conditions which Kaneb must adhere to upon completion of the acquisition. One of these conditions was a dividend restriction limiting the amount of dividends United Savings can pay in any fiscal year to 50% of its net income.[3] Kaneb subsequently acquired control of SGF without challenging the FSLIC's conditional approval.[4]
 
 
 4
 Kaneb filed with the FSLIC its application for acquisition of World in June 1979. Kaneb sought to acquire control of World, another federally insured savings and loan association, and merge it into United Savings.[5] While this application was pending, Kaneb filed a request seeking removal of the dividend restriction placed on United Savings by the FSLIC in the original SGF acquisition. Before passing on the request, the FSLIC issued a second resolution in January 1980 approving the World acquisition and merger with United Savings. However, the approval in this second resolution was again conditioned upon acceptance by Kaneb of a dividend restriction limiting such disbursements in any fiscal year to 50% of United Savings' net income.[6] Thereupon, Kaneb and SGF acquired World and merged it into United Savings.
 
 
 5
 It was not until April 1980 that the FSLIC acted upon petitioners' request to remove the dividend restriction contained in the original resolution approving the SGF acquisition. The FSLIC issued its third and final resolution, modifying the original dividend restriction and allowing petitioners more flexibility. In order to make the application of this new restriction consistent, the FSLIC ruled the new resolution would also modify the dividend restriction contained in the second resolution conditionally approving the World acquisition. Though this modified dividend restriction was less restrictive than the restrictions in the two previous resolutions, payments of dividends were still ultimately limited to 50% of United Savings' net income in any fiscal year.[7]
 
 
 6
 Petitioners filed petitions with this court seeking removal of the dividend restriction, claiming the FSLIC exceeded its statutory authority in conditionally approving the acquisitions of two of its insured saving and loan companies upon acceptance by petitioners of a limitation on payment of dividends.[8]
 
 II. Issues
 A. Estoppel
 
 7
 The threshold issue is whether petitioners are estopped from challenging the conditions imposed by the FSLIC once they completed the acquisitions.
 
 
 8
 It is recognized that under the doctrine of equitable estoppel a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects. E. g., Exchange Trust Drainage Co. v. Drainage Dist., 278 U.S. 421, 49 S.Ct. 181, 73 L.Ed. 436 (1929); Wall v. Parrot Silver & Copper Co., 244 U.S. 407, 37 S.Ct. 609, 61 L.Ed. 1229 (1917); Winslow v. Baltimore & O. R. Co., 208 U.S. 59, 28 S.Ct. 190, 52 L.Ed. 388 (1908); American Guaranty Corp. v. United States, 401 F.2d 1004 (Ct.Cl.1968). The Supreme Court extended this principle in Federal Power Commission v. Colorado Interstate Gas Co., 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955) to include estoppel based upon acceptance of the benefits of an administrative order or ruling.[9]
 
 
 9
 In Colorado Gas, the Supreme Court considered a case closely analogous to the present matter. There, a natural gas company challenged an order of the Federal Power Commission imposed on it as a condition of a merger by the company. The Commission had only conditionally approved the merger. Like petitioners in the present case, the gas company sought no review of the conditions but rather completed the merger and accepted the benefits of the transaction. The Supreme Court decided against the gas company, holding that "(the company) cannot now be allowed to attack an officially approved condition of the merger while retaining at the same time all of its benefits." 348 U.S. at 502, 75 S.Ct. at 473.
 
 
 10
 The estoppel doctrine applicable in Colorado Gas is also applicable here. As in Colorado Gas, petitioners were aware prior to accepting the benefits of both the SGF and World acquisitions of the conditions imposed on the transactions by the FSLIC.[10] No petitions challenging the dividend restrictions were filed before the transactions were completed. Rather, petitioners completed both transactions and accepted and retained the benefits of the FSLIC's conditional approval. To permit this subsequent challenge to a condition upon which approval was based would allow petitioners to circumvent the requirement of FSLIC approval. The estoppel principle approved in Colorado Gas is designed to prevent such a result. Accordingly, petitioners are estopped from attacking the FSLIC's conditional approval while retaining its benefits.[11]
 
 B. Statutory Authority
 
 11
 Notwithstanding that petitioners are estopped from asserting their claim, such an attack on the authority of the FSLIC to impose the present dividend restriction is nevertheless without merit. Congress has delegated broad regulatory authority to the FSLIC over acquisitions of insured institutions by savings and loan holding companies under the National Housing Act and its amendments. This authority includes the discretionary power to impose a dividend restriction.
 
 
 12
 It is clear that the intent of Congress was to give the FSLIC authority to impose conditions upon approval of an acquisition by a savings and loan holding company. Otherwise, it would not have been necessary to give authority to the FSLIC to initiate cease and desist proceedings for violation of "any condition in writing imposed by the (FSLIC) in connection with the granting of any application." 12 U.S.C. § 1730(e)(1). Furthermore, the FSLIC's imposition of the dividend condition corresponds directly with its statutory duty under 12 U.S.C. § 1730a(e)(1) and (2) to consider the financial resources and future prospects of the institutions involved before approving petitioners' application.[12] This is a proper course of action in lieu of the FSLIC's express authority to deny the application and is consistent with the overall authority to regulate holding companies as codified in 12 U.S.C. § 1730a.[13] Finally, the record indicates that the dividend condition imposed by the FSLIC was a rational and reasonable response to data indicating net worth and income performance trends by United Savings below the national average.
 
 
 13
 Accordingly, petitioners' requests for review and modification of FSLIC's orders are DENIED.
 
 
 
 [1]
 12 U.S.C. § 1730a(k) states in pertinent part as follows:
 (k) Any party aggrieved by an order of the Corporation under this section may obtain a review of such order by filing in the court of appeals of the United States for the circuit in which the principal office of such party is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the Corporation be modified, terminated, or set aside.
 
 
 [2]
 FSLIC approval was necessary because section 408 of the National Housing Act (NHA), 12 U.S.C. § 1730a(e)(1)(B), makes it unlawful to acquire control over an FSLIC-insured institution without prior written approval by the FSLIC. United Savings is an FSLIC-insured savings and loan association. Thus, SGF is a "savings and loan holding company" because it controls United Savings. 12 U.S.C. § 1730a(a)(1)(D). Consequently, by acquiring SGF, Kaneb was also taking control of SGF's FSLIC-insured subsidiary, thereby requiring approval from the FSLIC. Under the standard set out in the NHA for companies acquiring their first federally insured institution, the FSLIC must approve the acquisition "unless it finds the financial and managerial resources and future prospects of the company and institution involved to be such that the acquisition would be detrimental to the institution or the insurance risk of the Corporation." 12 U.S.C. § 1730a(e)(1)(B)
 
 
 [3]
 The fifth condition of this initial FSLIC resolution states as follows:
 
 
 [5]
 Dividends paid by United Savings Association of Texas in any fiscal year shall be limited to the lesser of (a) 50 percent of net income as reflected on United Savings' semi-annual reports to the Federal Home Loan Bank Board for that fiscal year or (b) net income remaining after satisfying the year-end regulatory increase in required net worth from current earnings
 
 
 [4]
 Pursuant to 12 U.S.C. § 1730a(k), petitioners had thirty days within which they could seek judicial review of the FSLIC's conditional approval
 
 
 [5]
 The standard of approval the FSLIC applied to the World acquisition was more difficult than the first takeover by Kaneb. In the SGF acquisition, the FSLIC could withhold approval only if the acquisition would be detrimental to the institution involved or the insurance risk of the FSLIC. See note 2 supra. However, in transactions such as the World acquisition where a savings and loan holding company seeks to gain control of more than one FSLIC-insured institution, there is no requirement to determine if the acquisition would be detrimental or a bad insurance risk. Rather, the FSLIC is only required under 12 U.S.C. § 1730a(e)(2) to consider the financial resources and future prospects of the holding company. By comparison to the identical standard under the Bank Holding Company Act, it is clear the FSLIC may even require Kaneb to be a "source of strength" to World. Accord, Board of Governors of the Federal Reserve System v. First Lincolnwood Corp., 439 U.S. 234, 249-53, 99 S.Ct. 505, 514-16, 58 L.Ed.2d 484 (1978). See note 12 infra
 
 
 [6]
 The dividend restriction contained in this second resolution approving the World acquisition was actually less restrictive than the condition imposed in the first resolution. The new condition did not include paragraph (b) of the condition in the first resolution. See note 2 supra. However, a provision was added prohibiting payments of dividends that would reduce United Savings' net worth below the level required of institutions insured for twenty years or more
 
 
 [7]
 In this final resolution, the FSLIC liberalized the earlier dividend restrictions by allowing dividends, undistributed in one year, to be paid by United Savings in subsequent years subject to the same overall 50% of net income ceiling
 
 
 [8]
 Petitioners actually filed two petitions for review of the FSLIC's orders with this court. The first petition challenged the dividend restriction set out in the second resolution. The second petition challenged the restriction imposed in the final resolution. Since the restriction in the second resolution was superseded in the third resolution and the issues presented in both petitions were identical, the petitions were consolidated for this decision
 
 
 [9]
 For a general discussion of equitable estoppel by acceptance of benefits, see Godoy v. County of Hawaii, 44 Haw. 312, 354 P.2d 78 (1960)
 
 
 [10]
 Compare Lehigh & New England Ry. Co. v. I. C. C., 540 F.2d 71, 78 (3d Cir.), cert. denied, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977), with Colorado Gas, supra, 348 U.S. at 502, 75 S.Ct. at 473
 
 
 [11]
 Petitioners argue that the FSLIC's own actions preclude the application of estoppel in this case. They assert that any estoppel argument disappeared in April 1980 when the FSLIC issued its third resolution modifying the dividend restrictions contained in the first two resolutions. Since, the argument proceeds, approval of the acquisitions was conditioned only upon acceptance of the restrictions in the two initial resolutions, estoppel does not apply against a challenge to the dividend restriction in the final resolution upon which no approval from the FSLIC was conditioned and petitioners did not accept
 The argument of petitioners runs contrary to the basis of the estoppel principle. The doctrine of estoppel is based on fair dealing and good conscience and prohibits the assertion of a position that would be contrary to equity for a party to allege. Cook v. Ball, 144 F.2d 423, 439 (7th Cir. 1945), cert. denied, 323 U.S. 761, 65 S.Ct. 93, 89 L.Ed. 609 (1944); Robinson v. Commissioner of Internal Revenue, 100 F.2d 847, 849 (6th Cir. 1939), cert. denied, 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476 (1939); Harvey Radio Laboratories, Inc. v. United States, 115 F.Supp. 444, 449 (Ct.Cl.1953), cert. denied, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954). The FSLIC issued the new dividend restriction only in a response to a request by petitioners for review of the initial restriction imposed in the SGF acquisition. Additionally, the FSLIC modified the restrictions to make them less restrictive and give petitioners more flexibility. See note 7 supra. It would therefore be adverse to the principles of fair play which is the basis of the estoppel doctrine, to rule that estoppel does not apply to preclude an attack on the final dividend restriction which gives petitioners more flexibility than the earlier restrictions and was issued only in response to a request for review of the earlier restrictions by petitioners.
 
 
 [12]
 The standard for approving acquisitions by savings and loan holding companies is identical to the standard contained in the Bank Holding Company Act, 12 U.S.C. § 1842(c), which the Board of Governors of the Federal Reserve System must apply before approving an acquisition by a bank holding company. In Board of Governors of the Federal Reserve System v. First Lincolnwood Corp., 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484 (1978), the Supreme Court upheld requirements by the Board of Governors in the absence of express statutory authorization that the holding company and subsidiary bank must meet minimum capital balances and that the application be a "source of strength" to the subsidiary before the acquisition will be approved. It is under this formidable standard, approved by the Supreme Court, that the dividend restriction was imposed against petitioners
 
 
 [13]
 Petitioners argue that there is no power vested in the FSLIC to impose a dividend condition under the approval authority of 12 U.S.C. § 1730a(e)(1) and (2) because another part of the same statute, section 1730a(g)(6), specifically provides the FSLIC with veto power over proposed dividend payments of a diversified holding company in certain circumstances. Thus, under the principles of statutory construction, the specific dividend provision excludes any other form of dividend control
 It has long been recognized that construction of a statute by an agency charged with its administration is entitled to great deference. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Accordingly, we agree with the FSLIC's interpretation that the veto provision in section 1730a(g)(6) which places a ceiling on the allowable debt structure does not exclude the authority to impose dividends restrictions as a method of insuring the positive overall impact of the acquisitions on the financial resources and future prospects of the institutions under section 1730a(e)(1) and (2).