## WAITS v. BLACK BAYOU DRAINAGE DIST.

(Division B. May 22, 1939.)

[189 So. 103. No. 33735.]

D. H. Waits, of Greenville, for appellant.

W. W. Pierce, Assistant Attorney General, amicus curiae.

**Ernest Kellner**, of Greenville, amicus curiae.

632

Percy & Farish and **D. S. Strauss**, all of Greenville, for appellee.

636

Argued orally by **D. H. Waits**, for appellant, by **W. W. Pierce**, amicus curiae, and by **H. P. Farish** and **D. S. Strauss**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

D. H. Waits purchased 160 acres of land from the state, which land had been sold for taxes, and the title to which had become absolute in the state as to state and county taxes. This land is described as Southwest quarter of section 30, township 17, range 7 west, and is situated in the Black Bayou Drainage District. The bill alleged that the land was sold on the first Monday of April, 1931, for taxes due thereon for the year 1930, including drainage

taxes; and was struck off and sold to the state of Mississippi; that not being redeemed from the said sale, the title to the land matured in the state, and on the 6th of September, 1934, patent No. 20946 was issued to the complainant, the patent being recorded in book No. 254, at page 589, of the records of Washington county. The Black Bayou Drainage District was organized under chapter 195 of the Laws of 1912, and amendments thereto, on September 4, 1916; and in connection therewith an assessment roll of total benefits to all the lands in the district, amounting to $1,494,349, was duly and legally prepared and filed by the commissioners of the district, and legally approved by the board of supervisors of Washington county, as provided by section 7, chapter 269, Laws of 1914. It was alleged that on the said assessment roll benefits in the sum of $2880 were assessed against this land, now owned by the complainant, as the total benefit to accrue thereto by reason of the improvement proposed by the district; and that on June 18, 1917, there was apportioned against the total benefits the sum of $740,745, plus 6% per annum interest, and bonds in the sum of $700,000 were ordered to be issued by the district, and by the board of supervisors.

It was alleged that in the year 1921 a second bond issue, in the sum of $150,000 was issued by the district, and an additional tax of $160,000 was levied against the lands in the district, apportioned against the original assessed benefits, the total of the two levies amounting to $900,745, with interest at 6% per annum, was levied and assessed against the real property in the district by the board of supervisors, in proportion to the assessment of benefits thereon, to be paid in annual installments, the total tax bearing interest at 6% per annum annually, payable on December 15th of each year.

It was further alleged that in the year 1932 the drainage district, finding itself in financial difficulties, in regard to the holders of the bonds then unpaid and outstanding, issued refunding bonds in the sum of $653,000;

and the assessment theretofore levied against the district was reapportioned and rearranged, so as to meet the maturity of the refunding bonds of 1932, and taxes were relevied by the drainage district; which bonds were validated by the Chancery Court of Washington County, Mississippi. That the said drainage district issued refunding bonds again in 1934, which were sold and delivered to the Reconstruction Finance Corporation, the maturities of the bonds were re-arranged, and unpaid taxes theretofore levied against the district were attempted to be re-levied, to agree with the maturities of the bonds directed to be issued and sold to the Reconstruction Finance Corporation. This bond issue was validated by the Chancery Court of Washington County.

It was then alleged that the drainage district was claiming the right to have the said land sold by the sheriff and tax collector for drainage taxes, or benefit assessments, together with interest thereon, which was alleged to have accrued on the land while the title thereto was vested in the state, the amount of said claim being $783.84.

The bill alleged that the drainage taxes or benefit assessments for the years 1931, 1932, 1933 and 1934, while the title to said land was vested in the state, did not accrue thereon, but on the contrary, were in abeyance during that time; and that the said assessments are uncollectible and, unenforceable, in that said lands were not subject to assessment so long as the title was vested in the state; that the assessment for drainage taxes or benefit assessments did not attach to said lands during the ownership of the state, and therefore the lands are not subject to sale therefor; and that the sale of the lands by the sheriff and tax collector on April 4, 1931, for nonpayment of state, county and drainage taxes exhausted the right of the said drainage district to have the lands sold for such failure, and that the lands cannot be sold again for failure to pay a tax levy thereon while the title was vested in the state under the previous tax sale.

It was then alleged that the drainage commissioners have required the board of supervisors of Washington county to have the lands in question sold for the drainage assessments levied thereon while the title to them was in the state, and if permitted to do so, complainant will be subjected to the damages and penalties accruing from such sale by the sheriff, which will work irreparable damage to complainant, and cast a cloud, doubt and suspicion upon his title, which he is entitled to have removed by the court. And the complainant prayed for process to issue against the Black Bayou Drainage District, and its commissioners, commanding them to appear, answer or demur to the bill of complaint, waiving answer under oath; and prayed for an injunction restraining and enjoining the said district and commissioners from enforcing the collection of the assessments maturing while the title to the land was in the state; and that a temporary restraining order be issued, and, on final hearing, be made perpetual. The complainant deraigned title, as required by law; answer was filed, and the case came on for trial on an agreed statement of facts, as follows:

"It is agreed by and between the complainant and the defendant in the above styled cause that in the original order levying the tax in the Black Bayou District, the said tax or assessment was ordered spread over a period of years; and the unpaid portion of the tax was ordered to bear interest at the rate of six per cent. per annum. In the orders in connection with the issuance of the refunding bonds in 1932 and 1934, the unpaid portion of the original benefit assessment was ordered to be paid in installments, and spread over a period of years. The tax in controversy in the instant litigation, was a part of the tax ordered to be paid in the original order spreading the tax over a period of years, and a part of the tax as rearranged in 1932 and 1934. It has not been paid to the Land Commissioner or to the drainage district. In ad-

dition thereto annual levies of assessment were made, in conformity to the original levy.

"If the amount claimed to be due on the land in controversy, together with the amounts claimed to be due by other parcels of land theretofore sold to the state, and which are situated in said district, is not collectible, then there must be, to the extent of the original assessment of benefits, a larger proportion of said benefit assessment paid by the other parcels of land in said district, and which were not sold to the state."

The Attorney-General filed an application to be admitted as attorney amicus curiae, which was allowed. On the hearing the court dismissed the bill, and allowed an appeal to this court.

Chapter 195, Laws of 1912, as amended by subsequent acts, is contained in chapter 107, Code of 1930. By section 4469 of the Code the assessment of benefits provided for is as follows: "The chancery court or chancellor in vacation shall at the same time that the assessment of benefits is filed, or at any subsequent time, when called upon by the board of commissioners of the district so to do, enter upon the minutes of the chancery court an order which shall have all the force of a judgment providing that there shall be assessed upon the real property of the district a special assessment, or levy, to pay the estimated cost of the improvement, with not less than ten (10) per cent., added for unforeseen contingencies, the amount to be assessed upon each tract of land included within the district shall be such part of the estimated cost of the improvement as the assessment of benefits against such tract bears to the assessment of benefits against all the real property in the district, and which said assessments are to be paid in annual installments, not to exceed ten (10) per cent., in any one year, as provided in such order, but if any landowner elects he may pay the whole amount of the assessment against his land before it becomes due, or at any time thereafter, or all or any part of said as-

sessment at any time he sees fit, provided such payment is made before any bonds are issued by the district.

"The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied by the chancery court or chancellor in vacation in an amount not to exceed the total amount of estimated benefits on all the real property in the district, and shall be entitled to preference to all demands, executions, encumbrances or liens whatsoever, and shall continue until such assessment, with any penalty and costs that may accrue thereon, shall have been paid. The remedy against such assessment shall be by appeal to the Supreme Court, and such appeal must be taken within twenty days from the time that said assessment has been made by the chancery court, or chancellor in vacation, and on such appeal the presumption shall be in favor of the legality of the assessment."

By section 4470 the board of supervisors is directed to make an annual tax levy at the same time as the county tax levy is made, or at any succeeding regular meeting, in an amount not exceeding the installment of assessments levied for that year sufficient to meet the obligations of the district.

It will be seen from a reading of section 4469, above set out in full, that the assessment so levied shall be a lien on all real property in the district, from the time the same is levied by the Chancery Court or the Chancellor in vacation, in an amount not exceeding the amount of estimated benefits on all real property in the district, and shall be entitled to preference "to all demands, executions, encumbrances or liens whatsoever, *and shall continue until such assessment, with any penalty and costs that may accrue thereon, shall have been paid.* (Italics supplied.)

This lien on the land for benefits was made in the exercise of the taxing power, on the basis of the theory that the value of the land increased to the extent of the benefits assessed, and that the owner of the land received in

benefits an amount equivalent to the taxes or lien assessed against it. It is true, the statute decreed that the state drainage tax shall be collected at the same time as the state and county taxes, and that the tax collector shall not accept an amount less than the state and county taxes, plus the drainage tax; and that at the sale, if no one bids the amount of the state, county and drainage taxes, the land shall be struck off to the state. See section 4488 of the Code, which provides, among other things, as follows: ''The land commissioner in his monthly settlements with the treasurer on account of money received in the sale of lands which were theretofore sold to the state for taxes and in his report thereof to the auditor shall specify the amount of the drainage taxes and damages thereon, and the drainage taxes accrued subsequently to the sale for taxes, shall be placed to the credit of the proper drainage district.''

The statute then directs that at the end of each month the Treasurer shall forward to each drainage district a statement of the amount of money to its credit, and on application of the drainage district shall issue a warrant on the treasury; and on application of the drainage district the Auditor of Public Accounts shall draw a warrant on the state Treasurer for the sum, and deliver it to the drainage district, which shall, in turn, deliver it to its treasurer and charge him therewith.

Under the law the drainage district was authorized to bid at the tax sale, to protect its interest in such case; and if it purchases at any tax sale under the terms of this section the board of commissioners, after the expiration of two years from the date of purchase, by an order entered on its minutes, may sell, lease or rent the land so purchased, the deed or lease to be executed by the president and secretary, under the seal of the district; but said lands not to be sold for an amount less than the price paid therefor, together with all subsequently accrued state, county, drainage and other taxes.

This declares that the policy of the law in regard to

the land is that it shall not be sold for less than the amount of all taxes due on the land at time of the sale. It is also provided in this section that the drainage district shall pay all state, county and other taxes assessed against the land purchased by it at tax sales, under the provisions of this section, out of any funds belonging to the district in the treasury.

Taking the law as above stated, it is clear that it was not the purpose of the Legislature to discharge the drainage district lands from accruing of taxes during the period it is held by the state under a tax sale.

By section 4502, Code of 1930, chapter 269, Laws of 1914, it is provided that this article shall be liberally construed to promote ditching, drainage and reclamation of wet, swampy and overflowed lands; and the collection of assessments thereunder "shall not be defeated by reason of any omission, imperfection or defect in the organization of any district, or in the proceedings occurring prior to the judgment of the court confirming assessment of benefits and damages; but said judgment shall be conclusive that all prior proceedings were regular and according to law. And in case any assessment shall be held to be void for want of notice, the said commissioners may, upon motion, be permitted to give such owner due notice and ask for a time to be set by the chancery court, or chancellor in vacation, for hearing any and all objections that said landowner may have to such proceedings and the assessment, and the chancery court, or chancellor in vacation at such time may make such orders in reference thereto as justice may require and may assess such landowner his just proportion of the benefits received by him by such proposed work or the damages suffered by him by such proposed work, and thereupon such assessment as to such land shall be binding and conclusive."

While the state is not required to pay the taxes accruing on the land for drainage purposes, and such taxes are held in abeyance during the time it is held by the

state, yet the taxes do accrue subject to the state's superior right, and when the state parts with its title, it does not free the land from such lien until the taxes are paid in full, and proceedings may be had under the statute to collect the assessments levied during the years when the state held the title, when the taxes were in abeyance. The bonds sold by the drainage districts are paid on assessments relatively equal to the lands held by the different property owners, each being assessed with the amount which his property is legally adjudged to have benefited. If the taxes are levied, although not collected during the period of the state's ownership, there is a basis upon which the drainage commissioner may operate in taking care of its obligations.

If the lands were freed from taxation during those years, it might be possible for a large amount of such lands to be freed from the obligation during that period, which would seriously impair the value of the bonds issued by the district, and their marketability, and would impose burdens on those paying their taxes, who would have to pay additional sums, which would be unjust and inequitable, and which was not within the contemplation of the Legislature in enacting the statutory plan. The principles controlling this case are announced in Howie v. Panola-Quitman Drainage District et al., 168 Miss. 387, 151 So. 154; Covington v. Meletio et al., 168 Miss. 497, 151 So. 735, and Seward v. City of Jackson, 165 Miss. 478, 144 So. 686.

It follows, from these cases, and from what we have said, that the drainage district was proceeding properly, and that the Chancellor was correct in dissolving the injunction sued out, and in dismissing the bill.

The judgment of the Chancery Court is therefore affirmed.

Affirmed.