WILLIS CREEK DRAINAGE DISTRICT v. YAZOO COUNTY.

Division A. Nov. 13, 1950.

No. 37622 (48 So. (2d) 498)

Henry & Barbour, for appellant.

Griffin Norquist, for appellee.

**McGehee, C. J.**

This is a suit filed by the appellant, Willis Creek Drainage District, for injunctive relief to compel the Board of

Supervisors of Yazoo County to make the necessary order for the selling of certain lands now belonging to the county in the said drainage district. In order to pay the delinquent drainage assessments for the years 1946, 1947 and 1948 in the total sum of $774.94; and to enjoin the sheriff and tax collector of said county to advertise and sell the said land for the collection of the said past due and unpaid assessments unless the same are paid by the county under the decree of the court which is asked to be entered in that behalf; and the complainant drainage district also prays for general relief.

The defendants interposed a general demurrer to the bill of complaint on the ground that there is no equity on the face thereof. The demurrer having been sustained, and the complainant having declined to amend or plead further, the court entered a final decree dismissing the suit, and the complainant appeals.

The bill alleges that on November 12, 1923, the bonds of the said drainage district in the sum of $60,000 were authorized to be issued as of October 1, 1923, and that the last four bonds of the series matured on October 1, 1945, 1946, 1947 and 1948, respectively; that on April 2, 1945, four separate tracts of land in the drainage district were purchased by the defendant Yazoo County at private sale from the owners thereof for a good and valuable consideration, and against which tracts of land the benefits originally assessed amounted to the sum of $4,415; that the assessment made by the commissioners of the drainage district was duly ratified, approved and confirmed by a decree of the chancery court, as provided by law; and that the purchaser, Yazoo County, paid the assessment levied by the board of supervisors on recommendation of the drainage commissioners of $4\frac{1}{2}\%$ on the assessed benefits for the year 1945 but declined to pay a similar amount for the years 1946, 1947, and 1948, but rejected a claim duly presented by the drainage district to the board of supervisors for the sum due for each of the said years.

The defendants denied the right of the drainage district to enforce the collection of the amount claimed against the county, or to compel the sheriff to sell the property for the collection thereof, on the ground that the land was exempt from the payment of any further amounts on the benefits assessed against the same, because of the fact that the four tracts of land belonged to the county during the period covered by the claim.

Section 4695, Code of 1942, Section 4450, Hemingway's Code of 1917, provides, among other things, that: "The chancery court or chancellor in vacation shall at the same time that the assessment of benefits is filed, or at any subsequent time, when called upon by the board of commissioners of the district so to do, enter upon the minutes of the chancery court an order which shall have all the force of a judgment providing that there shall be assessed upon the real property of the district a special assessment, or levy, to pay the estimated cost of the improvement, with not less than ten (10) per cent, added for unforeseen contingencies, the amount to be assessed upon each tract of land included within the district shall be such part of the estimated cost of the improvement as the assessment of benefits against such tract bears to the assessment of benefits against all the real property in the district, . . .

"The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied by the chancery court, or chancellor in vacation in an amount not to exceed the total amount of estimated benefits on all the real property in the district, and shall be entitled to preference to all demands, executions, encumbrances or liens whatsoever, and shall continue until such assessment with any penalty and cost that may accrue thereon, shall have been paid. . . ."

Thus, it will be seen that when the county purchased the four tracts of land in question on April 2, 1945, the same was encumbered by a judgment lien, rendered under

a statute which expressly provides that the same "shall continue until such assessment . . . shall have been paid."

Section 4090, Code of 1942, Chap. 174, Laws of 1936, provides in substance that when any land in a drainage district is sold to the State for delinquent taxes, the lien of the drainage district on the land for any special drainage district assessment shall not be abated or cancelled on account of the sale of such land to the State, but that such lien shall be held in abeyance during the period the property is owned by the State, and that when the land is sold the lien shall again become effective. And Section 4714, Code of 1942, provides in substance that in such case the land commissioner cannot sell the land for the State until he is furnished by the applicant with a certificate from the drainage commissioners showing that satisfactory arrangements have been made with the commissioners for the payment of the drainage taxes accruing subsequent to the sale to the State.

Section 4651, Code of 1942, authorizes the drainage commissioners to purchase from the State any land lying within the drainage district which has been sold to the State for delinquent taxes and remains unredeemed.

In other words, the judgment in rem which the chancery court is authorized to render in confirming the benefits assessed by the commissioners and the foregoing statutes declaring that the lien on the land for the collection of the assessed benefits shall not be abated, are all designed for the protection of the drainage district and to prevent an impairment of its contract with the bondholders who may have supplied the funds for the drainage and improvement of the lands against which the lien attaches.

 █ When the county became a voluntary purchaser of these lands, it could have protected itself by deducting from the purchase price the amount ascertained to be required for discharging the judgment lien against the lands. If the lien does not abate when the

State becomes an involuntary purchaser of such land for delinquent state and county ad valorem taxes, then the county, as a voluntary purchaser, should not be permitted to acquire the lands free of the lien, and especially where there exists no personal liability on the part of its grantors to pay the remaining installments needed to pay off the bonds.

It is said in one of the briefs that these lands were purchased by the county for use as an aviation field, and the other brief that it is for recreation ground, although the record does not disclose the purpose for which the county bought the land. Presumably, it is to be used for some public purpose and for the benefit of the entire county if purchased from public funds. There appears to be no good reason why the other property owners in the drainage district should be required to pay for the benefits which are assessed against these particular lands.

In the case of Waits v. Black Bayou Drainage District, 185 Miss. 626, 189 So. 103, 107, where some of the land in the drainage district was sold to the State for delinquent taxes, and it was contended that the State could sell it free from the drainage taxes, the Court said: "If the lands were freed from taxation during those years, it might be possible for a large amount of such lands to be freed from the obligation during that period, which would seriously impair the value of the bonds issued by the district, and their marketability, and would impose burdens on those paying their taxes, who would have to pay additional sums, which would be unjust and inequitable, and which was not within the contemplation of the Legislature in enacting the statutory plan. The principles controlling this case are announced in Howie v. Panola-Quitman Drainage District, 168 Miss. 387, 151 So. 154; Covington v. Meletio, 168 Miss. 497, 151 So. 735, and Seward v. City of Jackson, 165 Miss. 478, 144 So. 686."

The appellees rely upon Section 9697, Code of 1942, which provides, as follows: "The following shall be exempt from taxation: . . . (c) All property, real or per-

sonal, belonging to the State or to any county, levee board or municipal corporation thereof. . . ."

■■ However, we do not think that this provision was ever intended to abate an existing judgment lien as fixed by a final decree of the chancery court against land subsequently purchased by the State or one of its subdivisions. Moreover, it was held in the case of Barnes, Sheriff v. Jones, 139 Miss. 675, 103 So. 773, 776, that: "An exemption from taxation will never be presumed, and the burden is on a claimant to establish clearly his right to an exemption. In the case of Morris Ice Co. v. Adams, 75 Miss. 410, 22 So. 944, the court said that: 'The rule is universal that he who claims exemption must show, affirmatively, an exemption expressly declared and that the claimant is clearly embraced within the terms of the exemption.' "

■■ In addition to Section 9697, supra, the appellees rely for an exemption on the general rule that in the absence of a statute making a county or other governmental subdivision liable for taxes the same cannot be imposed, but we are of the opinion that while a drainage district assessment is a species of taxation, and is taxation in the broad sense of that term, the assessment is not a tax within the meaning of Section 9697, supra; cf. Huston v. Mayo, Drainage Commissioners, 120 Miss. 523, 82 So. 334, holding that a drainage assessment is a local assessment and not a tax within the meaning of our Constitution and statutes; and, ■■ moreover, we think that Section 4695, Code of 1942, Section 4450, Hemingway's Code of 1917, declaring that the decree of the chancery court confirming an assessment of benefits made by the drainage commissioners "shall have all the force of a judgment" constitutes an express statutory authority for holding that this land was purchased subject to a lien for the unpaid drainage assessments, and that the only way that the county could have discharged the lien was to have paid off the same.

All that was held in the case of Board of Supervisors of Holmes County v. Black Creek Drainage District, 99 Miss. 739, 55 So. 963, relied upon by the appellees, is that Section 1721, Code of 1906, was unconstitutional in that it encroached upon the jurisdiction of the board of supervisors over roads, ferries and bridges in violation of Section 170 of the State Constitution. We have carefully examined the other decisions relied upon by the appellees, and also the case of City of Inglewood v. Los Angeles County, 207 Cal. 697, 280 P. 360, but in view of the provisions of our drainage district statutes hereinbefore referred to, we do not think that the appellees are entitled to the exemption claimed. In none of the decisions of our Court referred to in the briefs was there involved a construction of Section 9697, Code of 1942, on exemptions.

While it is true that there is no statute which specifically imposes on the county the duty to pay a drainage assessment on lands such as those involved in this suit, it is likewise true that there is no statute which would expressly, or by necessary implication, authorize a county to acquire by purchase lands in a drainage district and hold them as long as it may choose to do so without paying the yearly installment due on the betterments assessed against said land, and there is therefore involved the well settled rule that one claiming exemption from taxation has the burden of showing that the claim comes clearly within the exemption law, unaffected by other statutes which clearly renders the property subject to a lien for the assessment in question.

We are therefore of the opinion that the trial court was in error in sustaining the demurrer and dismissing the bill of complaint, and that the cause must therefore be reversed and remanded.

Reversed and remanded.