BLACKWOOD *v.* SIBECK.

Opinion delivered January 13, 1930.

*Hal L. Norwood,* Attorney General, *Claude Duty* and *Walter L. Pope,* Assistants, for appellant.

*Neill Bohlinger,* for appellee.

SMITH, J. The question involved in this appeal is the liability of the counties of the State for the payment of the license fee, for the issuance of the tag or plate, which is placed upon motor vehicles owned by the counties, and used exclusively for public purposes.

In support of the contention that counties are not required to pay this license fee, we are cited to that portion of article 16, § 5, of the Constitution, which reads as follows: "* * * Provided, further, that

the following property shall be exempt from taxation: Public property used exclusively for public purposes.''

In further support of this contention, there is cited the case of *Board of Improvement* v. *School District*, 56 Ark. 335, 19 S. W. 969, wherein it was announced, as a rule of statutory construction, that counties and other governmental agencies are exempt from taxes, unless the statute imposing the taxes expressly, or by necessary implication, provides that they shall not be exempt.

Answering these contentions in the order stated, it may be first said that the imposition of this license fee is not a tax, within the meaning of the Constitution.

The case of *Pine Bluff Transfer Co.* v. *Nichol*, 140 Ark. 320, 215 S. W. 579, involved the validity of an act authorizing the levy of a tax in Jefferson County upon automobiles carrying passengers and freight, and in upholding the validity of the act we quoted from the case of *Fort Smith* v. *Scruggs*, 70 Ark. 549, 69 S. W. 679, as follows: ''The license fee imposed is, then, not a tax upon property, but is in the nature of a toll for the use of the improved streets. In other words, it is the privilege of using vehicles on the improved streets, and not the vehicle itself, that is taxed. We are therefore of the opinion that the statute is not subject to the criticism that it authorizes double taxation, and the contention of the defendant on that point must be overruled.'' See, also, *State* v. *Handlin*, 100 Ark. 175, 139 S. W. 1112; *St. L. Sw. Ry. Co.* v. *State*, 106 Ark. 321, 152 S. W. 110; *Floyd* v. *Miller Lbr. Co.*, 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811; *Standard Oil Co.* v. *Brodie*, 153 Ark. 144, 239 S. W. 753; *Stanley* v. *Gates*, 179 Ark. 886, 19 S. W. (2d) 1000.

The case of *Board of Improvement* v. *School District, supra,* did not hold that public property might not be taxed, but held only that there was a presumption against any such intention on the part of the Legislature, and that such a tax could be levied and collected only when the authority so to do was expressly con-

ferred, or arose by necessary implication from the legislation imposing the tax. As the reason for this rule, the court quoted from Cooley on Taxation (2d ed.) page 172, as follows: "Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the State, and its municipalities, and which is held by them for governmental purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the Legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State, and by all its municipalities for governmental purposes, was intended to be excluded, and the law will be administered as excluding it in fact."

There is therefore a presumption that the Legislature did not intend to impose this privilege tax on the property of the counties; but there is no limitation upon the power of the Legislature to do so, and the question is, has the Legislature sufficiently manifested the intention that the tax shall be paid by the counties to overcome the presumption to the contrary? A review of the legislation on the subject convinces us that it has, and that the counties must pay the tax.

Act 494 of the General Acts of 1921 (General Acts 1921, p. 490), is an act entitled, "An act to regulate the registration of motor vehicles and for other purposes." Section 2 of this act provides what the license fee shall be, and how it shall be ascertained. Section 3 of the

act provides that none of the fees provided by section 2 shall be charged against any vehicle, the title to which is in the Federal, State, or any county or city government, and directs the Highway Department to issue appropriate registration cards, and sets of plates free of charge, except the actual cost of said registration car and plates for any of the vehicles so owned, upon appropriate affidavit as to the title being filed. In the case of vehicles owned by the county, the statute provided that the affidavit should be made by the county judge.

By act 52 of the Acts of 1929 (Acts 1929, vol. 1, p. 103), § 3 of act 494 of the Acts of 1921 is expressly repealed, and by § 1 of act 52 it is provided that no automobile license tax shall be issued or furnished by the State Highway Department to any person, firm or corporation until a receipt signed by the duly authorized collector has been filed with the State Highway Department, showing that the full amount of said license fee as required by law has been paid.

Act 65 of the Acts of 1929 (Acts 1929, vol. 1, p. 264), as its title indicates, is a codification of the laws relating to State highways, and, by § 29 of this act, it is made the duty of the Highway Commission to furnish to the sheriffs of the various counties application blanks for the registration of motor vehicles on or before January 1 of each year. These blanks bear serial numbers, and are charged to the sheriff in the same manner in which poll tax receipts are charged to the collectors by the State Auditor, and the sheriff is required to pay $35 for any blank not returned or accounted for.

Other sections of the act provide that the sheriff can issue receipts for the motor license only upon the payment to him of the fees required by the act. Upon the exhibition of this receipt it becomes the duty of the Highway Commission to issue to the applicant a registration card and tags or plates. There is no other authority for the issuance of these registration cards or tags.

The only exemption from the payment of this license fee is found in § 35 of act 65, which reads, in part, as follows: "Motor vehicles belonging to the United States Government, and used in its business exclusively, shall not be required to pay any motor vehicle fuel tax or exhibit a State license plate, but in lieu of a State license plate shall have exhibited thereon a license plate in a form approved by the State Highway Commission, showing that they are United States Government motor vehicles."

It thus appears that in the case of this—the only—exemption from the act, the State license plate does not have to be obtained or exhibited, and the inference is therefore clear and irresistible that the Highway Commission cannot issue registration tags or plates, except upon the production of a receipt for the license fee which the law requires.

The excellent brief of the Attorney General cites many cases on this question, all of which are in harmony with the views here announced.

A general statement of the law appears in 42 C. J., page 670, in the chapter on motor vehicles, which reads as follows: "The fact that municipally owned motor vehicles are exempt from taxation, as property, does not exempt them from being licensed and registered under the State license regulations of motor vehicles."

Among the numerous cases cited in the note to the text quoted, and in the brief of the Attorney General, is that of *State* v. *Preston*, 103 Ore. 631, 206 Pac. 304, 23 A. L. R. 414, which is a well-considered case exactly in point. In discussing the effect of an act of the State of Oregon, imposing a license fee on certain motor vehicles, and exempting certain others, the Supreme Court of Oregon said: "When the Legislature declared what motor vehicles should not be affected by the act, those not within the exception were without it," this result being reached by the application of the maxim applic-

able alike in the construction of constitutions and statutes, "*expressio unius est exclusio alterius.*"

We conclude therefore that the counties of the State are required to pay the fee upon motor vehicles owned by them, and the judgment of the court below, to the contrary, is reversed, and the cause will be dismissed, and it is so ordered.