ARK. STATE HWY. COMM. *v.* SUB-DIST. No. 3 OF GRASSY LAKE AND TYRONZA DRAINAGE DIST. No. 9

5-3117                                              376 S. W. 2d 259

Opinion delivered February 3, 1964.

[Rehearing denied March 30, 1964.]

*Dowell Anders, Don Gillaspie* and *Mark Woolsey,* for appellant.

*C. M. Buck, Bruce Ivy* and *James E. Hyatt, Jr.* for appellee.

GEORGE ROSE SMITH, J. These two condemnation suits, consolidated below, are actually test cases by which the parties seek a determination of this question: Does a drainage district, by reason of its uncollected assessment of benefits, have a property interest in lands within the district for which it is entitled to compensation, in a condemnation proceeding, in addition to the award made to the landowner? The trial court answered this question in the affirmative, holding that the district was entitled to recover a sum equal to the total amount of all the unpaid future drainage district assessments that had been levied by the district against the land being condemned. By direct appeal the Commission contends that it does not owe the district anything. By cross appeal, which we do not reach, the district contends that it should recover a sum equal to the uncollected portion of the benefits assessed against the land being condemned.

The lands in question, which the Commission is taking in fee simple, lie within several overlapping drainage districts. This appellee, a typical drainage district, was organized in 1924 under the Alternative Drainage District Law. Ark. Stat. Ann. §§ 21-501 et seq. (Repl. 1956). Benefits from the proposed improvement were assessed against lands within the district. § 21-513. Funds for the construction of the drainage system were raised by the issuance and sale of bonds, secured by a pledge of the assessed benefits. § 21-553. For the payment of the bonds taxes are levied in annual installments against the assessment of benefits. § 21-554. This particular district now has an outstanding bonded debt with annual maturities running until 1980. The trustee for the bondholders was made a party to this litigation.

In these test cases the parties selected two fact situations for the presentation of their problem to the courts. In the first case the Highway Commission, without notice to the drainage district, acquired a tract with-

in the district by purchasing the fee simple title from the landowner. The Commission then brought this condemnation action against the district, alleging, however, that the district had no compensable property interest apart from that already acquired by the Commission from the landowner.

In the second case, involving another tract, the Commission joined the landowner and the district as defendants in a condemnation suit. The case was first tried with respect to the landowner's interest alone. He received an award for the fee simple estate. It was stipulated that whatever rights the drainage district might have would be determined at a later date.

The trial court, as we have said, held in both cases that the district had a separate compensable property right in the lands. This was error. There is no tenable theory upon which it can be said that the Commission is taking from the district an independent property right that is separable from the landowner's fee simple estate.

Two possible theories come to mind. First, the district has a lien against the assessment of benefits—a lien which, upon the landowner's failure to pay his taxes, may be enforced against the land itself by means of a foreclosure suit. Ark. Stat. Ann. § 21-546 (Repl. 1956). Thus the district has a remedial right against the land that is, if not actually a lien, at least in the nature of a lien.

Such a remedial right is not an estate in the land. With respect to true liens, such as mortgages, the condemnation award takes the place of the land, so that the lienholder's remedy is to proceed against the award. Nichols, Eminent Domain (Rev. 3d Ed.), § 5.74. Here the district chose to forego any claim against the landowner's award and to insist instead that it has a distinct cause of action against the condemnor. It is clear, however, that if the district's claim is in the nature of a lien its sole remedy is against the award.

Secondly, in addition to its remedy in the event of a delinquency the district also has a substantive right to

levy taxes in the future against the assessed benefits. It might be argued that the destruction of this power of taxation is a taking of property for which compensation must be made.

We think it plain that the district's potential ability to collect the assessed benefits must necessarily be regarded as an element in the landowner's fee simple estate, for which payment has admittedly been made. To illustrate: We were told in the oral argument that many years ago Mississippi county, where this litigation arose, contained extensive swamp areas of little value. By the creation of levee and drainage districts those swamps have been converted into valuable farm lands. That transformation has been financed by the assessment of benefits against the lands. It is perfectly clear that the physical benefits conferred by the various improvement districts are reflected in the increased market value of the farm land. When the condemnor pays that increased market value, as it has done in these cases, it also pays for the benefits conferred by the districts. If the condemnor were compelled also to pay the districts for their potential power of taxation, the condemnor would be paying twice for the same enhancement of value. If by any chance—and we express no opinion on this point—the district has some sort of equitable claim arising from the fact that the assessment of benefits has not been paid in full, that controversy is between the district and the landowner and can be of no concern to the condemnor.

This drainage district earnestly argues that, as a matter of equity, if the potential tax liability of the condemned land should be extinguished without compensation to the district the result will be to increase the payments that will eventually have to be made by the other landowners in the district. No doubt this is true, but the situation is simply an unavoidable consequence of the State's sovereign immunity from taxation. In fact, this situation is commonplace. Almost every tract of land taken by eminent domain is subject to future taxation for public improvements already made, such as a levee, a drainage system, a courthouse, a municipal auditor-

ium, a schoolhouse, and so on. There can, as a practical matter, obviously be no requirement that the sovereign satisfy all these nebulous obligations as a condition to the acquisition of the land. (See *Public Water Supply Dist. No. 3* v. *U.S.*, 135 F. Supp. 887.) That some shift in the burden of taxation may take place is merely one of the risks that every taxpayer incurs.

A somewhat similar argument is that the value of the district's outstanding bonds might be destroyed if the State should elect to condemn *all* the land in a particular improvement district. Whether equity might provide a remedy in that situation is a question that we prefer to leave unexplored until it arises. In the case at bar the lands being taken represent such a tiny part of the total taxable property in the district that there is not even a hint that the security of the outstanding bonds has been impaired. We do not feel called upon to adopt an unsound rule of law, by affirming this decree, merely to hedge against a contingency so remote that it does not seem ever to have arisen or to be likely ever to arise in the future.

Reversed.

HARRIS, C.J., and McFADDIN and HOLT, JJ., dissent.

ED. F. McFADDIN, Associate Justice (dissenting).

The appellant, Arkansas State Highway Commission (an agency of the State), will sometimes be referred to as "Highway Commission"; and appellee, Sub-District No. 3 of Grassy Lake and Tyronza Drainage District (duly created pursuant to law) will sometimes be referred to as "District." The brief of the appellant begins with the following clear statement:

"This case involves the determination of an important question of law, which has never before reached this Court. The outcome will directly affect the acquisition of a majority of the right of way for State highways in the future. Interstate Highway No. 55 traverses Mis-

sissippi County. The lands acquired for its construction were subject to benefits assessed by five drainage districts. Some of the property was purchased by warranty deed from the record holders of title to which deed the districts were not a party. In this situation, a separate lawsuit was filed against the districts in order to determine whether they had any compensable interest. The remaining property was condemned (the districts were parties defendant in the action), but the cases proceeded to judgment with the understanding between the Commission and the districts that their interest would be reserved and determined separately.''

Directly involved are two tracts of land herein referred to as Tract No. 5 and Tract No. 11. The Highway Commission acquired title to Tract No. 5 by eminent domain proceedings, and acquired title to Tract No. 11 by direct warranty deed from the owner. This case was tried before the Circuit Judge without a jury on an agreed statement, from which we copy the following pertinent excerpts:

''1. This hearing shall adjudicate the interests of Sub-District No. 3 . . . in the property designated as Tract No. 5 . . . and Tract No. 11 . . .

''2. That Tract No. 5, consisting of 50.058 acres, was condemned by the Arkansas State Highway Commission (hereinafter referred to as the Commission) on the 15th day of April, 1959, for State highway purposes; that the interest condemned and taken by the Commission was a fee simple absolute interest of the landowner; that the District was a party to this action and was properly summoned, *but it was agreed and understood that the interest of the District was not to be, and was not, determined at the time of trial or settlement of the landowner's interest, and that the rights of all Drainage Districts were reserved and were to be determined at a later date,*[1] that a trial by jury was conducted in this case, and judgment was entered on the 31st day of May, 1960, against the Commission, ordering the Commission to pay to E. L. Taliaferro, *et al.,* record owners, the sum of

---

[1] Emphasis supplied.

$37,885.50 as just compensation for their interest, and the said judgment purported to vest full title in fee simple absolute in the Commission. . . .

"3. That the original benefit assessed to Tract No. 5 is in the amount of $1,992.98; that this benefit has never been reduced; that the present annual levy on the tract is 3.3 per cent of the benefit assessed, amounting to $65.77 per year . . .

"4. That Tract No. 11, consisting of 11.579 acres, was purchased by the Commission for State highway purposes by warranty deed from Mrs. R. J. Brown, Sr., Trustee, *et al.*, record holders of title, on the 10th day of January, 1959; and that the sum of $13,500.00 was paid to the record holders of title in exchange for a warranty deed purporting to convey a fee simple absolute interest to the Commission. . . .

"5. That the original benefit assessed to Tract No. 11 is in the amount of $115.75; that this benefit has never been reduced; that the present annual levy on the tract is 3.3 per cent of the benefit assessed, amounting to $3.82 per year. . . .

"8. That benefits were assessed on the lands in the District by Order of the County Court of Mississippi County on the 24th day of September, 1925, in the amount of $3,776,262.81; and that the total of assessed benefits on the property taken by the Commission from the District is $25,597.92; . . .

"10. That there was outstanding at the time of taking the sum of $1,363,000.00 in refunding bonds, issued by the District and secured by a 'pledge and mortgage' to Union Planters National Bank, as Trustee, . . .

"12. That the total area of the District is 162,229 acres, and the total area acquired by the Commission within the District is 1,341.319 acres. . . .

"14. That the interests claimed by the District in Tract No. 5 and Tract No. 11 are those that arise under the laws of the State of Arkansas, from an Order of the County Court dated the 23rd day of December, 1924,

other orders made by the County Court in compliance with Statutes, and from subsequent Orders of the County Court creating an annual levy against the assessed benefits as adjudged in the Order of 1924 referred to above.''

The Trial Court was asked to answer certain questions, which said questions and answers as made are as follows:

''A. Does the District have such an interest in Tract No. 5 that it is a necessary party to a condemnation action under the eminent domain power of the Commission?'' ANSWER: ''Yes.''

''B. Does the District have such an interest in Tract No. 5 that it is entitled to compensation for the taking of this interest by the Commission in a condemnation action under the eminent domain power?'' ANSWER: ''Yes.''

''C. Does the District have such an interest in Tract No. 11 after its purchase in purported fee simple absolute from the record holder of title as to require the Commission to pay 'just compensation' for the taking of this interest in an eminent domain proceedings?'' ANSWER: ''Yes.''

''D. If the District is entitled to compensation for the taking of its interest in these tracts, how is the amount to be calculated?'' ANSWER: ''By calculating the sum equal to the total annual levy for the life of the present outstanding bond issue.''

The Trial Court rendered judgment for the District and against the Highway Commission for amounts as follows: for the taking of Tract No. 5, $1,223.20; and for the taking of Tract No. 11, $84.04. By this appeal the Highway Commission insists that the District is entitled to absolutely nothing, now or at any time in the future, for the taking of said Tracts Nos. 5 and 11. The Highway Commission claims that when it takes title to property for public use the same becomes exempt from taxation or payment of benefits already assessed. Furthermore, the Highway Commission claims that the assess-

ment of benefits constitutes only a *lien* and in no sense a title or interest in the land. Thus, the suit was to determine whether, under the stipulated facts, the Highway Commission would now or at any time in the future have to pay the District any amount whatsoever. As I see the case, there are presented two situations that necessitate separate consideration.

## I.

## LAND ACQUIRED BY DEED.

The Highway Commission acquired Tract No. 11 by deed direct from the landowner; and I insist that the Highway Commission must pay the future accruing assessments on the benefits the same as any other grantee would have to do who took a deed from the landowner. This conclusion is because of Ark. Stat. Ann. § 50-401 (1947), which reads as follows:

"All lands, tenements, and hereditaments may be aliened and possession thereof transferred by deed without livery of seizin, and the words, 'grant, bargain, and sell' shall be an express covenant to the grantee, his heirs and assigns, that the grantor is seized of an indefeasible estate in fee simple, free from incumbrance done or suffered from the grantor, except rents or services that may be expressly reserved by such deed, as also for the quiet enjoyment thereof against the grantor, his heirs and assigns and from the claim and demand of all other persons whatever, unless limited by express words in such deed; *provided, that as between the grantor and grantee, neither the statutory nor general express covenant of warranty against incumbrances shall be held to cover any taxes or assessments of any improvement district of any kind, whether formed under general statutes authorizing the assessment of lands for local improvements of any kind, or whether such improvement district be formed by public or private act of the Legislature, but the lien for any such local assessment or tax shall run with the land and be assumed by the grantee, and the grantee shall pay any and all installments of such tax or assessment becoming due after the execution and delivery of*

*the deed, unless otherwise expressly provided."* (The italicized language was added by 1917 Act, later to be discussed.)

This statute is interesting and a study of it is enlightening. It originally appears in Revised Statutes, Chapter 31, Section 1, and also was Section 731 of Kirby's Digest. It read exactly as it now does down to the word "provided." All the words after the word "provided" (and all italicized above) were added by Act No. 332 of 1917, which Act was captioned: "An Act to Amend Section 731 of Kirby's Digest of the Statutes of Arkansas, for the Purpose of Providing for the Payment of Taxes, Assessments, and Liens against Real Estate as between Grantor and Grantee." Evidently after improvement districts became numerous in Arkansas someone realized that under what had been Section 731 of Kirby's Digest (Ark. Stat. Ann. § 50-401 [1947], down to the proviso) the lien of the improvement district was a judgment against each tract of land in the district and that such judgment would cloud the title to the land whenever a person desired to sell it. So the Legislature adopted Act No. 332 of 1917 so that as between grantor and grantee the unmatured payments on the assessment of benefits would not be a cloud on the title.

At all events, said Section 50-401 now clearly states: *". . . the lien for any such any local assessment or tax shall run with the land and be assumed by the grantee, and the grantee shall pay any and all installments of such tax or assessment becoming due after the execution and delivery of the deed, unless otherwise expressly provided."* The State Highway Commission, by taking a deed from the landowner of the Tract No. 11, became a grantee and so is governed by the above statute, because we have no statute in Arkansas that exempts the Highway Commission from payment under the situation here existing.

The case of *Willis Creek Drainage Dist.* v. *Yazoo County,* 209 Miss. 849, 48 So. 2d 498, involved a situation practically the same as the one here, and the holding of the Supreme Court of Mississippi was in accordance

with the views that I am now expressing. The Willis Creek Drainage District was an improvement district, created under the laws of Mississippi, which gave the lien of assessed benefits practically the same force in that State as our statutes do in this State. (See Ark. Stat. Ann. § 21-542 [Repl. 1956].) The Willis Creek District had assessed its benefits and had issued bonds which were outstanding. Yazoo County purchased land from the owners at private sale for public purposes (*i.e.*, an aviation field); and then Yazoo County, claiming to be a subdivision of the State (just as the Highway Commission claims here), refused to pay the maturing assessments on the benefits. The District brought suit to have the land sold if the County refused to make the payment. The defense made by Yazoo County was that under the law of Mississippi all property owned by the State or its subdivisions was exempt from taxation. The Supreme Court of Mississippi held that the County must still pay the assessments on the benefits, saying that the provisions for examption was never "intended to abate an existing judgment lien as fixed by a final decree of the chancery court against lands subsequently purchased by the State or any of its subdivisions." The Mississippi statute said that the assessed benefits constituted a judgment, just as does our statute (Ark. Stat. Ann. § 21-542 [Repl. 1956]), and the Mississippi Court said: ". . . we are of the opinion that while a drainage district assessment is a species of taxation, and is taxation in the broad sense of that term, the assessment is not a tax within the meaning of Section 9697, supra; . . . and, moreover, we think that Section 4695, Code of 1942, Section 4450 of Hemingway's Code of 1917, declaring that the decree of the chancery court confirming an assessment of benefits made by the drainage commissioners 'shall have all the force of a judgment' constitutes an express statutory authority for holding that this land was purchased subject to a lien for the unpaid drainage assessments, and that the only way that the county could have discharged the lien was to have paid off the same."

As to exemption, the Court further said:

"While it is true that there is no statute which specifically imposes on the county the duty to pay a drainage assessment on land such as those involved in this suit, it is likewise true that there is no statute which would expressly, or by necessary implication, authorize a county to acquire by purchase lands in a drainage district and hold them as long as it may choose to do so without paying the yearly installment due on the betterments assessed against said land, and there is therefore involved the well settled rule that one claiming exemption from taxation has the burden of showing that the claim comes clearly within the exemption law, unaffected by other statutes which clearly render the property subject to a lien for the assessment in question."

I maintain that the decision of the Supreme Court of Mississippi is sound; and I am persuaded that we should apply that holding to the facts in this case, which are in all respects similar. The Highway Commission says that lands used for road purposes are public roads and are not liable for assessment of benefits; and in support thereof cites *Board of Imp.* v. *School Dist.*, 56 Ark. 354, 19 S. W. 969; *Waterworks Imp. Dist.* v. *Logan County*, 155 Ark. 257, 244 S. W. 4; and *Board of Comm.* v. *Arkansas County*, 179 Ark. 91, 14 S. W. 2d 226. These three cases specifically hold that public property cannot be assessed for benefits when the property is already used as public property; but these cases do not hold that the assessments cannot be collected when the benefits have already been assessed before the sovereign agency purchases the property. I readily agree that a district cannot levy an assessment of benefits against property that is already public when the assessment is being made. But when the improvement district assesses benefits against private property—as here—then the subsequent acquisition of the property by the public agency does not extinguish the assessment of benefits previously made. Our statute (§ 50-401) says that the grantee shall make the payments accruing after the date of the deed. The Highway Commission was the grantee in this deed and there is nothing in the statute that grants the Highway Commission any exemption.

If the Highway Commission desires to be relieved of future payments of improvement district assessments on any lands for which it may accept deeds, then the Highway Commission should ask the Legislature to provide a procedure for ascertaining the lump sum payment that the Highway Commission should pay. That is a matter which addresses itself to the legislative department. Under the law as it now stands the Highway Commission cannot become the grantee in a deed and still claim an exemption. Therefore I dissent from so much of the Majority Opinion as holds that the State Highway Commission is not required to pay the District anything, now or any time in the future, for maturing benefits on the land to which the Highway Commission received a deed.

## II.

### LAND ACQUIRED BY CONDEMNATION.

The Highway Commission acquired Tract No. 5 by condemnation; and I insist that the Highway Commission is liable to the District in this case for maturing benefits on such land. Such liability is clear to me because of the way this case was tried and *because of the stipulation.* It will be recalled that the Highway Commission elected to try the case against the landowner on the value of the land and then to try the case against the District separately. The stipulation recites: ". . . *it was agreed and understood that the interest of the District was not to be, and was not, determined at the time of trial or settlement of the landowner's interest, and that the rights of all drainage districts were reserved and were to be determined at a later date.*" The Highway Commission could have tried all of the cases at one time and then the jury could have determined the total value of the land and also the present cash value due the District for the unmatured assessments. But the Highway Commission stipulated that the interest of the District was not determined by the settlement of the landowner's interest. If the District was entitled to anything against the landowner originally, then it is entitled to that amount against the Highway Commission now

*under the stipulation by which this present case was tried.*

It was stipulated that this district was organized under the alternate drainage district law. The applicable statute (Ark. Stat. Ann. § 21-542 [Repl. 1956]) provides that when the assessment of benefits is filed, the county court shall ". . . enter upon its records an order, *which shall have all the force of a judgment,* providing that there shall be assessed upon the real property of the district a tax sufficient to pay the estimated cost of the improvement . . . which tax is to be paid by the real property in the district in the proportion to the amount of the assessment of benefits thereon, . . . *The tax so levied shall be a lien upon all the real property in the district from the time the same is levied by the county court . . . and shall continue until such assessment . . . shall have been paid."* (Emphasis supplied.)

When the assessed benefits were approved and the order was entered by the county court, such order became *"a judgment"* and the benefits became a lien on the land which continued until paid. I do not claim that the District had any *title* to the land condemned, but I do claim that the District had a *judgment lien* on the land, like a mortgage, for the payment of benefits as they mature; and as such *lien claimant* the District is entitled to have its claim satisfied. In 18 Am. Jur. p. 868, "Eminent Domain", § 235, the text reads: "It is a general and well established rule that, when the mortgaged property is taken by eminent domain . . . the mortgagee's rights against the land follow the award, and he may have the mortgage debt satisfied out of that fund . . ."

In 45 A.L.R. 2d p. 522 there is an annotation entitled: Rights in respect of real estate taxes where property is taken in eminent domain"; and on Page 552 cases from several jurisdictions are cited to sustain this text: "The rights of a mortgagee, a judgment creditor, or an easement holder, in respect of taxes in a condemnation proceeding, have been considered in a few cases, in the majority of which it was held substantially that under the circumstances present such lienor had an enforceable

interest in the award." And on Page 555, in the same annotation, in discussing eminent domain proceedings, a number of federal and state cases are cited to sustain this text: "Taxes which have accrued or become a lien on real estate under the local law prior to its acquisition by the United States by eminent domain proceedings are payable out of the compensation fund." I maintain that the Highway Commission properly made the District a party defendant in the condemnation case and that the District was entitled to be paid out of any award made; but when the Highway Commission elected, as it did in this case, to try the landowner's rights in one case and then try the District's case separately, the Highway Commission necessarily became liable to the District for the amount of the District's lien.

The Majority Opinion says that the amount of land here taken is small and that the benefits on such land bear a very small ratio to the total benefits in the District. But the doctrine of *de minimus*[2] cannot apply to a case involving lands and payment of benefits. See *Lumsden* v. *Erstine*, 205 Ark. 1004, 172 S. W. 2d 409; and *Reeves* v. *Jackson*, 207 Ark. 1089, 184 S. W. 2d 256. If the Highway Commission can take title to six acres of land in one case, then another agency of the sovereign can take title to six thousand acres.

The effect of the present Opinion is far reaching.[3] If the District in this case can be entirely ignored when the Highway Commission takes a deed to land or acquires title by eminent domain, then the same holding would apply if any other agency of the sovereign should do likewise. The Game and Fish Commission could

---

[2] The doctrine of *de minimus* comes from the Latin maxim, *de minimus non curat lex,* and is translated, "the law does not take notice of little things." See annotation in 44 A.L.R. 168.

[3] For the benefit of anyone interested in further study of the questions in this case, attention is called to the following: *Bacon* v. *Road Imp. Dist.*, 157 Ark. 309, 248 S. W. 267; *Drainage Dist.* v. *Exchange Trust Co.*, 175 Ark. 934, 2 S. W. 2d 32, 278 U.S. 421 and page 579, 73 L. Ed. 436 and page 517; *Ridgeway* v. *Lewis*, 203 Ark. 1063, 160 S. W. 2d 50; Annotation in 105 A.L.R. 1169 entitled: "Constitutionality of statutes relieving property subject to assessment for improvements from all or part of such assessments"; Annotation in 90 A.L.R. 1137 entitled: "Public property as subject to special assessment for improvement"; and *Adaman Mutual Water Co.* v. *United States*, 278 F. 2d 842.

acquire title to thousands of acres for a hunting or fishing preserve; and all the lands so acquired would be exempt from the collection of all future benefits in all improvement districts. The districts would be ruined, and the bond holders would be left to whistle for their money.

For the reasons herein stated, I dissent from the Majority Opinion. The Chief Justice and Justice HOLT join in this dissent.