SLIP OPINION

Cite as 2016 Ark. 34

# SUPREME COURT OF ARKANSAS

No. CV–15–357

| | |
|---|---|
| WASHINGTON COUNTY; JEFF WILLIAMS, WASHINGTON COUNTY TAX ASSESSOR; DAVID RUFF, WASHINGTON COUNTY TAX COLLECTOR; AND FAYETTEVILLE SCHOOL DISTRICT NO. 1 <br> APPELLANTS <br><br> V. <br><br> BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS <br> APPELLEE | Opinion Delivered February 04, 2016 <br><br> APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NOS. CV12-3060-1, CV13-2227-1] <br><br> HONORABLE DOUG MARTIN, JUDGE <br><br> AFFIRMED. |

KAREN R. BAKER, Associate Justice

This appeal stems from the ad valorem taxation of certain parcels of property owned by the appellee, Board of Trustees of the University of Arkansas ("the University"). In 2011, 2012, and 2013, the University submitted applications to the appellant, Washington County Tax Assessor,[1] seeking immunity from taxation, or alternatively, exemption from taxation for tax years 2010, 2011, and 2012.[2] Thereafter, litigation ensued, and the cases were

---

[1]The appellants are Washington County, a governmental entity located in northwest Arkansas; Jeff Williams, the publicly elected Assessor of Washington County; David Ruff, the publicly elected Collector of Washington County; and the Fayetteville School District No.1, a governmental entity operating in Washington County, Arkansas.

[2] The University originally sought immunity from ad valorem taxation as to 46 parcels of real property and 20 parcels of personal property. However, on May 23, 2014, the circuit court granted the University's motion to non-suit. Accordingly, there are a total of eleven parcels at issue in this case; ten parcels of real property and one parcel of personal property.

SLIP OPINION

consolidated on the joint motion of the parties. The procedural history of this matter is as follows. The Washington County Tax Assessor denied the University's applications. The University appealed the denial to the Washington County Board of Equalization, which affirmed the assessor's decision. Under protest, the University paid the assessed taxes and appealed the Board of Equalization's decision to Washington County Court. The Washington County Court affirmed the Board of Equalization's decision. On December 19, 2012, the University appealed to the circuit court. On January 18, 2013, the University filed its complaint in the circuit court and filed its amended complaint on May 13, 2014. The Fayetteville School District intervened in the case, asserting that the greatest portion of the taxes assessed and collected by Washington County are distributed to the school district, giving the school district an interest related to the property and taxes at issue. Washington County and the University did not object to the school district's intervention. The appellants will hereinafter be collectively referred to as "Fayetteville."

Once litigation proceeded in the circuit court, competing summary judgment motions were filed by both parties. On October 28, 2014, the circuit court held a hearing. On December 31, 2014, the circuit court announced its ruling from the bench, granting the University's motion for summary judgment and denying Fayetteville's and entered an order to that effect that same day. On January 12, 2015, Fayetteville filed a motion pursuant to Arkansas Rule of Civil Procedure 52(b) for amended findings of facts and for additional findings, including a Rule 54(b) certificate. On January 29, 2015, Fayetteville filed its notice of appeal. On February 2, 2015, the circuit court entered a final order. On February 3, 2015,

SLIP OPINION

Fayetteville filed its second notice of appeal.

The parties timely filed their respective briefs, and with permission of the court, the Attorney General of the State of Arkansas filed an amicus curiae brief in support of the University. From the circuit court's order granting the University summary judgment, Fayetteville timely appeals and presents one issue: whether the circuit court erred in holding that the University is entitled to sovereign immunity from ad valorem taxation.

## I. *Standard of Review*

Moving to our standard of review, "summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law." *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. "Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist." *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. "When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo." *State v. Cassell*, 2013 Ark. 221, 4–5, 427 S.W.3d 663, 666 (citations omitted). "De novo review means that the entire case is open for review." *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted).

Also on review, "[t]his court reviews a circuit court's interpretation of a constitutional provision de novo. We are not bound by a circuit court's decision, but in the absence of a showing that the [circuit] court erred in its interpretation of the law, that interpretation will be accepted on appeal. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. Furthermore, when engaging in constitutional construction and interpretation, this court looks to the history of the constitutional provision. The Arkansas Constitution must be considered as whole, and every provision must be read in light of other provisions relating to the same subject matter." *Gatzke v. Weiss*, 375 Ark. 207, 211, 289 S.W.3d 455, 458 (2008) (citations omitted).

With these standards in mind, we turn now to the issue on appeal.

## II. *Sovereign Immunity from Ad Valorem Taxation*

At issue is the circuit court's February 2, 2015, order which granted the University's motion for summary judgment and held that the University was immune from ad valorem taxation based on sovereign immunity:

> For the reasons stated by the Honorable William Storey in a proceeding held on December 31, 2014, the Court finds, as a matter of law, that the University is an instrumentality of the State of Arkansas and that it possesses sovereign immunity from ad valorem taxation. A copy of the written Order and the transcript of the proceeding held on December 31, 2014 are respectively attached hereto as Exhibits 1 and 2 and incorporated herein by reference.[3] Judge Storey specifically held that the Board of

---

[3]Judge Storey's order in its entirety stated as follows:

Trustees of the University of Arkansas is an instrumentality of the State of Arkansas and cited *Arkansas v. Texas*, 346 U.S. 368 (1953), in support of his determination. Judge Storey then held that the University, as an instrumentality of the State of Arkansas, possesses sovereign immunity from ad valorem taxation under the Arkansas Constitution. Judge Storey cited *Arkansas State Highway Commission v. Sub-District No. 3 Grassy Lake*, 237 Ark. 614 (1964), and generally referenced other cases cited by the University's brief in reaching the Court's ruling.

As determined and announced by Judge Storey in open court on December 31, 2014, and as entered into the record in a written Order on the same day, this Court finds and holds, as a matter of law, that the Motion for Partial Summary Judgment filed by the Intervenor was denied. In open court and in the Order entered on December 31, 2014, this Court finds and holds, as a matter of law, that the Motion for Partial Summary Judgment, as adopted by Washington County, the Washington County Tax Assessor, and the Washington County Tax Collector in their Statement of Concurrence and Adoption by Reference, was denied as well. This Court incorporates by reference and adopts Judge Storey's bench ruling and written Order entered for the record on December 31, 2014, as its own in this Judgment. For the avoidance of all doubt, the Court FINDS and ORDERS:

A.      Intervenor's Motion for Partial Summary Judgment is hereby DENIED;

B.      Washington County's Motion for Partial Summary Judgment is hereby DENIED; and

C.      The University's Motion for Summary Judgment is hereby GRANTED. These rulings on the parties' respective motions are intended to be and are declared to be consistent with Judge Storey's original ruling and Order dated December

---

Now on this 31st day of December, 2014, comes on for consideration the referenced matter and from all things and matters before the Court, the Court finds:

1.      That Defendants' motions for summary judgment should be and are hereby denied.

2.      That Plaintiffs motion for summary judgement should be and is hereby granted.

IT IS SO ORDERED.

31, 2014.

Accordingly, the narrow issue in this case is whether the University is immune from ad valorem taxation as to the specific parcels involved in this case.

### A. Sovereignty

We turn to the genesis of the sovereign state. Sovereignty is the "the supreme, absolute, and uncontrollable power by which an independent state is governed and from which all specific political powers are derived; the intentional independence of a state, combined with the right and power of regulating its internal affairs without foreign interference. Sovereignty is the power of a state to do everything necessary to govern itself, such as making, executing, and applying laws; [and] imposing and collecting taxes. . . . The sovereignty of a state is determined with reference to the U.S. Constitution, which is the supreme law of the land." *West Encyclopedia on American Law*, 2d ed., 258–89, Vol. 9 (2005).

### B. Authority to Tax

With regard to the power to tax, article 2, section 23 of the Arkansas Constitution, entitled, "Taxation and eminent domain; delegation," provides that

> [t]he State's ancient right of . . . taxation, is herein fully and expressly conceded; and the General Assembly may delegate the taxing power, with the necessary restriction, to the State's subordinate political and municipal corporations, to the extent of providing for their existence, maintenance and well being, but no further.

Ark. Const. art. 2, § 23.

With regard to taxation of property, article 16, section 5, provides in pertinent part:

(a) All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State.

. . . .

(b) The following property shall be exempt from taxation: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity.

### C. Analysis – Arkansas Constitution article 16, section 5

Having reviewed the principles of sovereignty and taxation, we move to our review of the Arkansas Constitution to address the issue before us. Fayetteville contends that the circuit court erred in its interpretation of article 16, section 5 and asserts that the University is "subject to" ad valorem taxation. Fayetteville further asserts that there is not a reported decision by this court involving ad valorem taxation which holds that property owned by the state of Arkansas is immune from ad valorem taxation. Fayetteville also contends that the Arkansas Constitution does not grant immunity to the state from ad valorem taxation or its instrumentalities. Rather, Fayetteville contends that our constitution employs a use analysis, stating in section 5(a) that all property subject to taxation shall be taxed and that public property shall be taxed and exempted only under subsection (b) if it is used exclusively for public purposes. Relying on *Arkansas Teacher Retirement System v. Short*, 2011 Ark. 263, at 10, 381 S.W.3d 834, 840, Fayetteville contends that:

> [t]he decision in the *Short* case leaves no doubt that property owned by agencies and instrumentalities of the state – including the University of Arkansas – is not immune from taxation simply because those agencies and instrumentalities hold title to the property in their names and serve the beneficent public purposes. *Short* makes it abundantly clear that such entities must show that the particular property at issue is actually and exclusively used for public purpose. . . . [T]he University of Arkansas must . . . prove that the parcels of property at issue here are actually and exclusively used for a public purpose. The University will have the opportunity to offer such proof in connection with its exemption claim. It cannot short-circuit that process by claiming

SLIP OPINION

sovereign immunity.

The University responds that it is not "subject to" taxation, and therefore, the analysis ends because it is simply immune from taxation, and an analysis regarding exemption and subsection (b) is not necessary. The University further responds that if all property were subject to taxation, the constitution would state "all property is subject to," not "subject to" which contemplates exclusions either by immunity or by exemption. The University also responds that, as an instrumentality of the sovereign state, its property enjoys immunity from taxation as a sovereign entity and that the exemption analysis is not necessary and it urges us to affirm the circuit court.

Fayetteville replies that, even if the University is an instrumentality of the State, an analysis of taxation and exemption is required based on our constitution. In sum, both parties rely on the absence of language in article 16, section 5 as support for their respective arguments.

We turn now to the constitutional provisions at issue. In *City of Fayetteville v. Washington County*, 369 Ark. 455, 468, 255 S.W.3d 844, 853– 54 (2007), we interpreted our constitution and explained our standard of review regarding constitutional challenges:

This court has been absolutely clear about our role in interpreting the Arkansas Constitution:

"The people of the State, in the rightful exercise of their sovereign powers, ordained and established the constitution; and the only duty devolved upon this court is to expound and interpret it." *Lake View*, 351 Ark. at 54, 91 S.W.3d at 484 (quoting *State v. Floyd*, 9 Ark. 302, 315 (1849)). We have specifically defined the standards we use when interpreting the Arkansas Constitution to be as follows: When interpreting the constitution on appeal, our task is to read the laws as they are written, and interpret them in accordance with established

principles of constitutional construction. It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction de novo. We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003) (internal citations omitted).

Applying this standard to the constitutional provisions at issue, the plain language of article 23, section 2 provides that the state has the right to tax and the General Assembly may delegate the taxing power. Further, the plain language of article 16, section 5, subsection (a) provides that real and tangible personal property are subject to taxation. However, as noted by the parties, in our constitution there is an absence of language articulating that property owned by the state is "subject to" taxation.[4]

Based on the plain language of the constitution, the constitution does not state that sovereign property is subject to ad valorem taxation. Further, in reviewing our long-standing

---

[4] We note that the "subject to" language was first adopted in our 1836 constitution and was a single subsection and did not include subsection (b). Art. 7, REVENUE section 1–2 (emphasis in original) stated in pertinent part:

SEC. 1. All revenue shall be raised by taxation to be fixed by law.

SEC. 2. All property *subject to taxation*, shall be taxed according to its value – that value to ascertained in such manner as the General Assembly shall direct[.] . . . *Provided*, the General Assembly shall have power to tax merchants, hawkers, peddlers, and privileges, in such a manner as may from time to time be prescribed by law: *And provided further*, that no other or greater amount of revenue shall at any time be levied than required for the necessary expenses of the government, unless by a concurrence of two-thirds of both houses of the General Assembly.

SLIP OPINION

precedent, in *School District of Ft. Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896), we

interpreted article 16, section 5 and addressed the issue of when public property is exempt

from taxation. In our analysis we also addressed immunity from taxation and explained

> The constitution of the state declares that laws exempting property from taxation, except as therein provided, shall be void. Const. art. 16, § 6; *Railway Co. v. Worthen*, 46 Ark. 312. It further provides that the following property shall be exempt from taxation: "Public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity." Const. 1874, art. 16, § 5. *This provision defining what public property is exempt from taxation does not refer to property owned by the state, for the presumption is that the state does not intend to tax its own property, but it refers to property owned by the public corporations, or organizations of the state, such as counties, cities, towns, and school districts.* It will be noticed that all public property is not exempt from taxation, but only that public property which is used exclusively for public purposes. It is conceded that this land is public property, but the question of its exemption from taxation is not determined alone by its character as public property, but also by the nature of its use. This land is not used for school grounds, nor is there any intention to erect upon it buildings of any kind for the use of schools; but it was purchased, and is now held, only for the purpose of sale or for rent.

*Id.* at 484, 37 S.W. at 717–18(emphasis added).

Additionally, in *Blackwood v. Sibeck*, 180 Ark. 815, 23 S.W.2d 259, 260 (1930), we also

recognized sovereign immunity from ad valorem taxation. The issue on appeal in *Blackwood*

addressed the liability of the counties of the state for the payment of the license fee for the

issuance of the tag or plate that is placed upon motor vehicles owned by the counties and used

exclusively for public purposes. In *Blackwood*, in addressing tax statutes regarding the county,

we explained that

> The case of *Board of Improvement v. School District*, . . . [56 Ark. 354, 19 S.W. 969 (1892)], did not hold that public property might not be taxed, but held only that there was a presumption against any such intention on the part of the Legislature, and that such a tax could be levied and collected only when the authority so to do was

expressly conferred or arose by necessary implication from the legislation imposing the tax. As the reason for this rule, the court quoted from Cooley on Taxation (2d Ed.) p. 172, as follows: "Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for governmental purposes. All such property is taxable if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefitted but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact."

*Blackwood*, 180 Ark. at 816–17, 23 S.W.2d at 260 (1930).

More recently, in *Arkansas State Highway Comm'n v. Sub-Dist. No. 3 of Grassy Lake*, in a condemnation action, a drainage district asserted that the exercise of eminent domain on its lands by the State Highway Commission would reduce its property tax base and create a deficiency that would necessarily have to be made up by other landowners in the district.

This drainage district earnestly argues that, as a matter of equity, if the potential tax liability of the condemned land should be extinguished without compensation to the district the result will be to increase the payments that will eventually have to be made by the other landowners in the district. *No doubt this is true, but the situation is simply an unavoidable consequence of the State's sovereign immunity from taxation*. In fact, this situation is commonplace. Almost every tract of land taken by eminent domain is subject to future taxation for public improvements already made, such as a levee, a drainage system, a courthouse, a municipal auditorium, a schoolhouse, and so on. *There can, as a practical matter, obviously be no requirement that the sovereign satisfy all these nebulous obligations as a condition to the acquisition of the land.* (See *Public Water Supply Dist. No. 3 of Jackson County, Mo. v. United States*, 135 F.Supp. 887, 133 Ct.Cl. 348.) That some shift in the burden of taxation may take place is merely one of the risks that every taxpayer incurs.

*Id.*, 237 Ark. 614, 617–18, 376 S.W.2d 259, 261 (1964) (emphasis added).

Finally, although Fayetteville asserts that our decision in *Short*, 2011 Ark. 263, at 10, 381 S.W.3d at 840, supports its position, we disagree. In that case, we addressed the issue of whether certain property was used exclusively for public use with regard to exemption, not immunity. Specifically, the Arkansas Teacher Retirement System contended that the circuit court erred in concluding that the property was not exempt from the payment of ad valorem taxes pursuant to article 16, section 5(b) of the Arkansas Constitution. *Id*. at 1, 381 S.W.3d at 835. Accordingly, the issue on appeal was not immunity from taxation and therefore, this case is not relevant to our discussion.

Here, our constitution delegates the power to enact laws regarding taxation. The record demonstrates that our General Assembly has not enacted a law subjecting property owned by the state to ad valorem taxation, nor has the General Assembly delegated that power to subordinate political and municipal corporations. Therefore, in reviewing the specific facts and circumstances in this particular case, based on our constitution and long-standing precedent, we hold that the property owned by the state is immune from ad valorem taxation.

As the United States Supreme Court explained in *Van Brocklin v. Anderson*, 117 U.S. 151, 174–75 (1886):

> In short, under a republican form of government, the whole property of the state is owned and held by the state for public uses, and is not taxable, unless the state which owns and holds it for those uses clearly enacts that it shall share the burden of taxation with other property within its jurisdiction. Whether the property of one of the states of the Union is taxable under the laws of that state depends upon the intention of the state as manifested by those laws.

Further, "All [state owned] property is taxable, if the State shall see fit to tax it; but to

12

levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefitted. . . . It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state . . . will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the constitution or statute." Thomas M. Cooley, *The Law of Taxation*, 1313 (4[th] ed.) Accordingly, to tax property to simply take from one pocket and return it to the same pocket is non-sensical.

III. *The University of Arkansas as an Instrumentality of the State of Arkansas*

Having established that property owned by the state in this case is immune from ad valorem taxation under these facts, we must also resolve the specific issue before us, whether the University is the state in this situation and entitled to immunity from taxation. We answer that question in the affirmative. In *Texas v. Arkansas*, 346 U.S. 368, 370 (1953), in addressing a contract issue, the United States Supreme Court held as follows:

> [A]s we read Arkansas law the University of Arkansas is an official state instrumentality; and we conclude that for purposes of our original jurisdiction any injury under the contract to the University is an injury to Arkansas.

The Supreme Court further held:

> The University, which was created by the Arkansas legislature, is governed by a Board of Trustees appointed by the Governor with consent of the Senate. The Board, to be sure, is 'a body politic and corporate with power to issue bonds which do not pledge the credit of the State. But the Board must report all of its expenditures to the legislature, and the State owns all the property used by the University. The Board of Trustees is denominated 'a public agency' of the State, the University is

SLIP OPINION

referred to as 'an instrument of the state in the performance of a governmental work', and a suit against the University is a suit against the State.

*Id*. at 371.

Additionally, our holdings have been consistent with those of the United States Supreme Court's that the University is an instrumentality of the State and acting as the State. In *State v. University of Arkansas Board of Trustees*, 241 Ark. 399, 401, 407 S.W.2d 916, 916–17 (1966), we explained:

> In the light of the holding of the United States Supreme Court in *State of Arkansas v. State of Texas*, we hold that this suit against the University of Arkansas Board of Trustees is a suit against the State.

Accordingly, consistent with our precedent, we hold that the University is an instrumentality of the State of Arkansas and for the reasons discussed above, the property at issue here is immune from ad valorem taxation. Therefore, we affirm the circuit court.

Affirmed.

Special Justice REX M. TERRY joins in this opinion.

Special Justice BRIAN A. VANDIVER concurs.

BRILL, C.J., and GOODSON, J., not participating.

**BRIAN A. VANDIVER, Special Justice, concurring.** I agree with the court's decision to affirm the trial court. I agree that the University is an instrumentality of the State and that is, in my opinion, fairly well settled. But I write separately because I answer the sovereign-immunity question differently, for the following reasons.

The University concedes that it is entitled to sovereign immunity from ad valorem taxes under Ark. Const. art. 16, § 5 only if the property is "held for a public purpose."

SLIP OPINION

Therefore, I believe the narrow and specific issue presented in this unique case of limited implied sovereign immunity under art. 16, § 5 turns on this question: Are the University's parcels in question held for a public purpose?

First, I believe it is important to clarify the type of sovereign immunity at issue. To the extent there is a limited implied sovereign immunity from ad valorem taxes under art. 16, § 5, it is, in my opinion, different and not as strong as the express sovereign immunity from suit found at Ark. Const. art 5, § 20. This court has so recognized a distinction between the two, insofar as it relates to appellate jurisdiction, in another recent case brought by the University. *See Bd. of Trustees v. Pulaski Cty.*, 2013 Ark. 230. In *Pulaski County*, the University made the same argument it makes in this case with regard to ad valorem taxes imposed by Pulaski County on certain parcels of property at UAMS. In that case, the trial court denied the University's motion for summary judgment and the University attempted an interlocutory appeal. This court dismissed the appeal for lack of jurisdiction because this court held immunity from suit is different from the immunity from ad valorem taxes as asserted by the University in Pulaski County (and now again in this case). I agree with that distinction, not only for purposes of appellate jurisdiction, but substantively as well. Therefore, in my opinion, this Court's vast body of case law applying a "rigid" analysis to the express sovereign immunity from suit that originates from art. 20, § 5 (see, e.g., *Short v. Westark Cmty. College*, 347 Ark. 497, 504, 65 s.w. 3d 550, 445 (2002)), is not applicable in this case where the University asserts a limited implied sovereign immunity from paying an ad valorem tax which originates, according to the University, from art. 16, § 5.

Second, if we are dealing with a different type of sovereign immunity, then how is it different? The majority begins its analysis with a discussion of the State's sovereignty and the State's power to delegate the power to tax. I do not necessarily disagree with those general fundamental principles of government. There is no question that the State generally has the power to tax, it may delegate that power to the counties and other local governments, and that it has so delegated to the counties the power to impose ad valorem taxes. But there is also equally no question that, in 1958, the voters of this State prohibited the State from imposing any ad valorem tax at the state level. See Ark. Const. amend 47. This raises in my mind a curious question: If the State has no power to impose an ad valorem tax on its own, and the counties clearly do, then what sovereign immunity, if any, can the State assert as a defense to paying the ad valorem tax imposed by the counties on property held by the State? In my opinion, it is a very limited implied sovereign immunity because, at the end of the day, the State still has the power to delegate to (or take away from) the counties the power to impose the ad valorem tax. And, I do agree with the majority that the Arkansas legislature has not yet expressly waived or abrogated the State's limited implied sovereign immunity from paying ad valorem taxes imposed by the counties (although I acknowledge that the legislature certainly could do so if it so desired).

Third, I believe the University's argument is too broad, but I also believe the Fayetteville appellants' argument is too narrow. I do not read art. 16, § 5 (a) and (b) as separate and distinct provisions like the University does. Nor am I convinced that this Court's dicta in *School District of Ft. Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896)

conclusively determines that the more onerous public-property exemption under art. 16, §
5(b), requiring "exclusive use" for a public purpose, never applies to property owned by the
State. If that were the case, then why would the University assert both art. 16, § 5(a)
sovereign immunity and art. 16, § 5(b) exclusive-use-exemption defenses to all of its parcels
in this case (and I note in the *Pulaski County* case too). It seems to me that the University,
rightly so, first argued limited implied sovereign immunity, but was prepared to argue the
exclusive-use exemption in the alternative if necessary. Further, in *Arkansas Teacher Retirement
System v. Short*, 2011 Ark. 263, 381 S.W.3d 834, this court specifically decided whether the
art. 16, § 5(b) exemption would apply to an instrumentality of the State. Likewise, the
Arkansas legislature has specifically utilized the art. 16, § 5(b) exemption language by stating
that all property owned by the Arkansas State Highway Commission or the Arkansas State
Highway and Transportation Department is "public property used exclusively for public
purposes" and, therefore, " neither the commission nor the department pursuant to Arkansas
Constitution, Article 16, § 5, is required to pay real or personal property taxes on real estate
and tangible personal property owned by that commission or department . . . . " *See* Ark.
Code Ann. § 26-3-308(a)(Repl.. 2012). Moreover, the Arkansas Assessment Coordination
Department itself has stated that "all property" is "subject to" the ad valorem tax unless it is
exempt under 5(b) or another applicable exemption. *See Frequently Asked Questions, Arkansas
Assessment Coordination Department* (Second Revision June 14, 2012) ("1. What property in
this state is subject to taxation? All property that is not exempt under the constitution, ACA
26-3-201. Property that is exempt under the Arkansas Constitution is: (1) public property

17

used exclusively for public purposes . . . .").  Taken to its logical extreme, the University's argument might mean that the University is immune from paying any local tax, whether it be a tax on real property, a tax on personal property, a sales tax, and the like.  Surely that is not the law.

But I also do not read art. 16, § 5 as strictly as the Fayetteville appellants do, that there simply is no limited implied sovereign immunity from ad valorem taxes and the "exclusive use" test under §5(b) is the University's only possible defense.  Even if the "exclusive use" test from §5(b) is not the issue before the court (and I agree with the majority that it is not), there still must be some requirement and some evidence that the property is held by the University for a public purpose for the limited sovereign immunity to apply, as the University has conceded.  If that were not required, then the University (and any other instrumentality of the State) would be allowed to hold property for any purpose and remain completely immune from ad valorem taxes.  Surely that is not the law either.

The University argues, and the majority concludes, that *Short* is irrelevant to this case because *Short* was limited to the exclusive-use exemption under §5(b).  To the contrary, I believe *Short* is very instructive in this case.  First, the University and the majority say that sovereign immunity was not raised in the *Short* case.  That may be true, but the question is why was it not raised?  I do not presume that the learned counsel in *Short* missed the issue or that sovereign immunity would have applied even if it had been raised.  Second, if sovereign immunity had been raised in *Short*, the University argued to the trial court below, and I agree that *Short* is factually distinct from the present case because the parcels in *Short* were clearly

held (or, in that case, leased) for a private purpose. Thus, as the University conceded to the trial court below, the limited implied sovereign immunity in art. 16, § 5(a) would not have applied in *Short*, which could very likely be a reason why it was not raised.

This brings me to my primary concern with the scope the of majority's opinion. The majority assumes that any property held by the State or its instrumentalities (like the University) is held for a public purpose without requiring any inquiry into the property's purpose and, thus, the State and its instrumentalities would always be entitled to sovereign immunity from ad valorem taxes on any parcels held regardless of the purpose. I do not read the limited implied-sovereign-immunity in art. 16, § 5 that broadly. In my opinion, the limited implied sovereign immunity analysis in this unique case hinges upon whether the University's parcels are held for a public purpose. Therefore, the converse is also true – if the parcels are not held for a public purpose, then the University is not entitled to the limited implied sovereign immunity.

Fourth, there is another wrinkle to this case. The University argues, correctly in my opinion, that, pursuant to Ark. Const. art. 14, § 2, property held by the University is presumed to have a public purpose. While that may be true, that public-purpose presumption can be rebutted, and sovereign immunity destroyed, with certain facts as in *Short*, which the University admitted to the trial court below: "*Of course, if the property itself is taken beyond what was contemplated is used for a sovereign, I don't know how that would be inconsistent with the position that we read as we went through each one of these cases where we're talking about state property held for a public purpose.*" (emphasis added).

Fifth, are the University's parcels in this case held for a public purpose? The University says yes, while the Fayetteville appellants say no, which would suggest a disputed issue of fact. But I agree with the majority that there are no disputed issues of material fact for these reasons.

The simple fact that the property is titled in the Board's name is, in my opinion, insufficient evidence by itself that the parcels are held for a public purpose. However, the additional evidence in this case, limited to the parcels in question, sufficiently demonstrates in my opinion that the purposes of those parcels are the University's book store and the University's green space (which might be used for future University development).

The tax assessor's affidavit is insufficient evidence, in my opinion, to rebut the constitutional presumption and destroy the University's limited implied sovereign immunity from ad valorem taxes under Art. 16, § 5. Further, the affidavit is, in my opinion, conclusory and speculative. The tax assessor does not explain his conjecture that the book store "appeared to be purely a profit-making venture" or his conclusion and "belief that none of the parcels of real property which are the subject of this action [are] held for a public purpose." Thus, in my opinion, such evidence cannot preclude summary judgment to the University on its limited implied-sovereign-immunity argument. It is well settled that speculation and conjecture alone cannot prevent summary judgment. *See* Ark. R. Civ. P. 56(e); *Browning v. Browning*, 319 Ark. 205, 890 S.W.2d 273 (1995) (conjecture about rope's condition not sufficiently probative to avoid summary judgment). On this record, and for these parcels, summary judgment to the University was appropriate because the admissible and

undisputed material evidence sufficiently established that the parcels were held for a public purpose.

However, had the trial court been presented with different facts (e.g., if there had been factual admissible evidence that the purpose of the property truly was a private purpose as was the case in *Short*), then perhaps the constitutional presumption of a public purpose could be rebutted, the limited implied sovereign immunity under art. 16, §5 could be destroyed, and the result perhaps could be different (as may or may not be the case for the University's non–suited parcels in this case or its other real and personal property in this State). But those facts are not before this court.

Finally, the Fayetteville appellants argue that not being allowed to impose the ad valorem tax on the University's parcels in question is unfair and inequitable because, for example, the University and its employees and students benefit from the services provided by the county and the school district. I do not necessarily disagree with that argument, but I make two observations. First, I agree with the majority and underscore that this decision is limited to the parcels before the court. This decision does not apply to all of the University's real and personal property. Second, the Fayetteville appellants' argument raises a policy matter for the Arkansas legislature to address (if it so desires), not this court. Some states have legislatively addressed the alleged inequity of a state's sovereign immunity from ad valorem taxes in a variety of ways for many years. *See, e.g.*, *Compensating Local Governments for Loss of Tax Base Due to State Ownership of Land* (New York State Department of Taxation & Finance September 1996) (50-state survey of various methods used by states to compensate local

governments for tax-base reduction due to state ownership of land). The Fayetteville appellants' argument might be directed to their state representatives, but it has no bearing on this case.

For these reasons, I concur in the decision to affirm the trial court's decision granting summary judgment to the University.

*Steven S. Zega*, Washington County Attorney, for appellants Washington County; Russell Hill, elected successor to Jeff Williams, Washington County Assessor; and David Ruff, Washington County Tax Collector.

*Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark* and *William Jackson Butt II*, for appellant Fayetteville School District No. 1.

*Fred Harrison*, General Counsel, by: *T. Scott Varady*, *William R. Kincaid*, and *Matthew McCoy*, Associate General Counsel, for appellee.

*Leslie Rutledge*, Att'y Gen., by: *Bourgon B. Reynolds*, Ass't Att'y Gen., amicus curiae in support of appellee.